BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, et al., Plaintiffs-Appellants,

v.

TOUCHE ROSS & COMPANY, et al., Defendants-Appellees.

No. 85–8343.

United States Court of Appeals, Eleventh Circuit.

Feb. 20, 1986.

Robert W. Patrick, Karen Wildau, Jesse H. Austin, III, Samuel J. Zusmann, Jr., Atlanta, Ga., for plaintiffs-appellants.

Jeffrey M. Smith, Atlanta, Ga., for Touche Ross & Co.

Timothy R. Askew, Jr., Atlanta, Ga., for other defendants-appellees.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and ATKINS *, Senior District Judge.

GODBOLD, Chief Judge:

Plaintiff banks filed suit against Touche Ross and a number of the firm's partners and employees seeking to recover treble damages for alleged violations of the Racketeering Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §§ 1961, *et seq.* The district court, 603 F.Supp. 351, dismissed the complaint for failure to state a claim. F.R.Civ.P. 12(b)(6). We reverse.

## BACKGROUND

Plaintiffs are five banks who extended $60 million in credit to International Horizons, Inc. As a prerequisite to execution of the credit agreement International Horizons was required to provide audited financial statements and unqualified reports to the banks. Defendant Touche Ross, a firm of certified public accountants, prepared these statements.

Two years after the financing agreement was signed International Horizons filed for bankruptcy. During the course of the bankruptcy litigation, the banks entered into a settlement with International Horizons that resulted in a loss to the banks of approximately $16.7 million in unpaid loans and legal expenses.

## DISCUSSION

The banks filed this suit under § 1964 of RICO which provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

The complaint alleges that defendants violated §§ 1962(c) and (d) which provide:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

Restating the banks' factual allegations within RICO's definitional framework,[1]

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The terms "person," "enterprise," "racketeering activity," and "pattern of racketeering activity" are defined under § 1961 of RICO as follows:

(1) "racketeering activity" means ... (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) ...;

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

they allege that defendants were "persons" employed by or associated with International Horizons, an "enterprise" engaged in interstate and foreign commerce and that the banks suffered injury as a result of defendants' direct or indirect participation in the conduct of International Horizons' affairs through a "pattern of racketeering activity" (i.e., two or more acts of mail fraud and wire, fraud).

The district court dismissed the action, relying on its earlier decision in *Morosani v. First National Bank of Atlanta*, 581 F.Supp. 945 (N.D.Ga.1984) and held that to state a claim under § 1964(c) a plaintiff must allege an injury resulting from the "social harm" that the RICO statute sought to address and the injury must "link up" with a recognized purpose served by the statute.

The district court explained that there were two settings in which a civil cause of action under RICO could arise. In the first factual setting the racketeer/defendant manipulates the affairs of the enterprise by committing multiple criminal acts, *i.e.*, a pattern of racketeering injury, that have primary impact on the enterprise and collateral impact (adverse economic impact) on others. The social harm seen by the court is collateral economic harm flowing from unlawful manipulation of the enterprise's affairs.

In the second class of cases the enterprise is a corrupt or criminal enterprise that undertakes a pattern of racketeering activity, *i.e.* of criminal acts, directed at plaintiffs. The social harm designated by the district court is the enhancement of power that presumptively occurs when multiple criminal acts are committed by a corrupt enterprise.

The banks failed to allege either of these factual settings. This action does not fall within the first class of cases because the banks alleged direct rather than collateral economic injury, and it does not fall within

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred

the second category because the banks did not allege that International Horizons was a corrupt or criminal enterprise.

The district court dismissed the case before the Supreme Court handed down its decision in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In *Sedima* the Court rejected the Second Circuit's requirement that under § 1964(c) a plaintiff must establish a "racketeering injury" separate from the harm received as a result of the predicate acts prohibited by RICO. The Court held that to establish a civil RICO claim a plaintiff is required only to allege conduct of an enterprise through a pattern of racketeering activity and an injury to his business or property resulting from the pattern.

> [T]he statute requires no more than this. Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is a commission of those acts in connection with the conduct of an enterprise. Those acts are, when committed in the circumstances delineated in Section ᵒ1962(c), "an activity which RICO was designed to deter." Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.

*Sedima*, 105 S.Ct. at 3286.

In *Sedima* the Court also rejected an attempt to restrict RICO's civil application by a narrow reading of the statute premised upon the social harm addressed by the statute:

> The court's statement that the plaintiff must seek redress for an injury caused by conduct that RICO was designed to deter is unhelpfully tautological. Nor is clarity furnished by a negative statement of its rule: standing is not provided by

within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]

the injury resulting from the predicate acts themselves.

.    .    .    .    .

We need not pinpoint the Second Circuit's precise holding, for we perceive no distinct "racketeering injury" requirement. Given that "racketeering activity" consists of no more and no less than commission of a predicate act, § 1961(1), we are initially doubtful about a requirement of a "racketeering injury" separate from the harm of the predicate acts. A reading of the statute belies any such requirement.... There is no room in the statutory language for an additional, amorphous "racketeering injury" requirement.

*Sedima,* 105 S.Ct. at 3284–3285.

■ Therefore, under *Sedima,* the district court's analysis cannot stand. The banks were not required to allege an injury separate from the harm caused by the predicate acts described in § 1961. The district court's reliance upon a construct based upon the social harm addressed by the statute and the necessity for collateral rather than direct injury was not in accord with the Supreme Court's later decision.

■ Nevertheless, defendants contend that dismissal was warranted under Rule 12(b)(6) because the banks failed to allege sufficient participation by them in International Horizons' affairs. This argument lacks merit. RICO does not require the degree of participation urged by defendants. It is not necessary that a RICO defendant participate in the management or operation of the enterprise. On its face, the statute requires only that the defendant "participate, directly or indirectly in the conduct of [the] enterprise's affairs...." 18 U.S.C. § 1962(c).

The substantive proscriptions of the RICO statute apply to insiders *and outsiders*—those merely "associated with" an enterprise—who participate directly *and indirectly* in the enterprise's affairs

through a pattern of racketeering activity.... The RICO net is woven tightly to trap even the smallest fish, those peripherally involved.

*United States v. Watchmaker,* 761 F.2d 1459, 1476 (11th Cir.1985), *quoting United States v. Elliott,* 571 F.2d 880, 903 (5th Cir.) *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978) (emphasis in original).[2]

Defendants argue that Congress intended to limit the reach of a civil RICO action by imposing a "conduct" requirement, *i.e.,* that defendant conducted or participated in the conduct of a RICO enterprise in a significant manner. This argument ignores the "directly or indirectly" language of § 1962(c).

■ The complaint alleges sufficient participation to withstand a 12(b)(6) motion. The banks have alleged that defendants assisted in the preparation and dissemination of false financial statements. These financial statements were helpful to International Horizons because they allegedly induced the banks to lend money to the enterprise. The word "conduct" in § 1962(c) simply means the performance of activities necessary or helpful to the operation of the enterprise. *U.S. v. Martino,* 648 F.2d 367 (5th Cir.1981), *aff'd on other grounds sub nom. Russello v. U.S.,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).

■ Defendants' argument that they were independent auditors and, therefore, did not participate in International Horizons' affairs also misses the mark. This argument raises a question of fact that may not be addressed on a motion to dismiss.

■ Defendants also contend that the banks failed to allege the existence of a pattern of racketeering activity. Although § 1961(5) merely requires "at least two acts of racketeering activity" in order to establish a pattern, the Supreme Court has indicated that two acts may not be suffi-

---

**2.** Although our prior decisions refusing to impose a "conduct" requirement occurred in criminal context, all of them were interpretations of

§ 1962, which provides the cause of action for civil RICO suits.

cient. In *Sedima* the Court reviewed the legislative history of RICO and stated that two isolated acts of racketeering activity do not constitute a pattern; rather, to establish a pattern there must be a showing of more than one racketeering activity and the threat of continuing activity. As an aid in interpreting RICO's pattern requirement, the Court quoted from 18 U.S.C. § 3575(e): "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sedima,* 105 S.Ct. at 3285, n. 14.

▮ In this case the banks have alleged nine separate acts of wire and mail fraud, involving the same parties over a period of three years, for the purpose of inducing the banks to extend credit to International Horizons. Under *Sedima* the complaint satisfies the pattern requirement.

▮ Nor is the complaint deficient because the banks have alleged only one instance of mail fraud in which defendants actively placed a document in the mail. The banks have alleged that on seven occasions defendants prepared false financial statements and reports that they knew would be mailed to the banks. All that is necessary to establish a mailing under 18 U.S.C. § 1341 is a showing that the defendant acted "with knowledge that the use of the mails [would] follow in the ordinary course of business, or where such use [could] reasonably be foreseen, even though not actually intended...." *Pereira v. U.S.,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435, 444 (1954); *U.S. v. Green,* 494 F.2d 820, 824 (5th Cir.), *cert. denied,* 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 280 (1974).

▮ Defendants urge this court to adopt a rule under which the predicate acts must occur in different criminal episodes in order to satisfy the pattern requirement. In this case all the alleged acts of wire and mail fraud were part of a single scheme.

Defendants' interpretation, however, not only ignores the language of § 3575(e) quoted by the *Sedima* Court but also contradicts the rule of this circuit. Acts that are part of the same scheme or transaction can qualify as distinct predicate acts.

The standard which has been applied in this Circuit is whether each act constitutes "a separate violation of the [state or federal] statute" governing the conduct in question.... If distinct statutory violations are found, the predicate acts will be considered to be distinct irrespective of the circumstances under which they arose.

*U.S. v. Watchmaker,* 761 F.2d at 1475. The banks have alleged separate violations of 18 U.S.C. §§ 1341 (relating to mail fraud) and 1343 (relating to wire fraud). Therefore, the complaint satisfied the pattern requirement set forth in *Watchmaker.*

The banks' allegations are sufficient to state a claim under § 1964(c) of RICO.

REVERSED.