**BANCO de DESARROLLO AGROPECUARIO, S.A., Plaintiff,**

v.

**Robert B. GIBBS, the First Venezuelan Company Ltd., The Bank of International Credit Ltd., Devinco of Florida, Inc., and Alfredo Beracasa, Defendants.**

**No. 85–3946–Civ.**

United States District Court, S.D. Florida.

Aug. 1, 1986.

---

**1170**

Mark Wilenski, Weiss & Handler, P.A., Boca Raton, Fla., for Southern Floridabank.

Jay Schwartz, Shea & Gould, P.A., Miami, Fla., for Alfredo Beracasa.

Gerald Wald, Murai, Wald, Biondo, Matthews & Moreno, P.A., Miami, Fla., for defendants The First Venezuelan Co., Ltd., The Bank of Intern. Credit, Ltd., and Devinco of Florida, Inc.

Patricia Lowry, Steel, Hector, & Davis, P.A., Miami, Fla., for Robert V. Gibbs.

Aubrey V. Kendall, Mershon, Sawyer, Johnston, Dunwody & Cole, P.A., Miami, Fla., for plaintiff.

## ORDER GRANTING MOTIONS TO DISMISS

JAMES LAWRENCE KING, Chief Judge.

This cause comes on before the court upon defendant's motions to dismiss.

Plaintiff has brought this complaint against two individuals, Robert Gibbs and Alfredo Beracasa, and three corporations, The First Venezuelan Company Ltd., ("TFV"), Bank of International Credit Ltd. ("BICL"), and Devinco of Florida, Inc. ("Devinco") alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and state law counts of breach of contract and fraudulent conveyance. Count I alleges a violation of § 1962(c) against defendants Gibbs and Beracasa. Count II alleges a violation of § 1962(a) against defendant Gibbs. Count III alleges a violation of § 1962(a) against defendants Gibbs, BICL, and TFV. Count IV alleges violation of 1962(a) against TFV, BICL and Devinco, thereby violating § 1962(d) (the conspiracy provision of RICO). Counts V and VI are omitted. Count VII alleges

that Gibbs conspired with TFV and BICL to violate § 1962(a), thereby violating § 1962(d). Count VIII of the complaint alleges that Gibbs conspired with Beracasa to violate § 1962(c), thereby violating § 1962(d). Count IX alleges breach of contract against BICL and Count X alleges fraudulent conveyance against BICL.

In the complaint plaintiff alleges that Gibbs and others organized TFV, a corporation which Gibbs allegedly was to manage. *Complaint* paragraph 8. Plaintiff alleges that at the request and insistence of Gibbs, TFV organized a wholly owned subsidiary—BICL—to engage in investment banking functions. *Complaint* paragraph 10. Gibbs allegedly dominated and controlled the operations of BICL. *Complaint* paragraph 10. Plaintiff allegedly deposited a total of eight million dollars with BICL, and received in exchange three certificates of deposit. *Complaint* paragraphs 12–21.

Plaintiff further alleges that Gibbs, "through the use of entities that he owned, managed or controlled ... engaged in a scheme to loot BICL, to hinder, delay and defraud BICL's creditors, and to use the assets of BICL for his own benefit." *Complaint* paragraph 22. The complaint describes the acts and financial transactions which Gibbs allegedly caused to occur in furtherance of his scheme as a result of his control over BICL and TFV. *Complaint* paragraph 22–29. One of these alleged acts involved the transfer of eight million to another corporation allegedly controlled by Gibbs, International Capital Development Corp. ("ICD"). *Complaint* paragraph 23. Plaintiff alleges that each of the transactions described in the complaint were part of Gibbs' scheme to loot BICL, to delay and defraud BICL's creditors and to use the assets of BICL for his own benefit; all in furtherance of the alleged scheme.

The complaint further states that in late 1983, defendant Beracasa joined in Gibbs' alleged scheme to loot BICL and defraud its creditors. *Complaint* paragraph 30. Subsequent to Beracasa joining the alleged scheme, several other financial transactions

in furtherance of the scheme occurred as a result of an agreement between Gibbs and Beracasa or between Gibbs, Beracasa and other individuals not named as defendants in this action. *Complaint* paragraphs 31–34.

The certificates of deposits were not paid by BICL when they came due. *Complaint* paragraph 35–36.

All defendants, with the exception of defendant Beracasa, moved to dismiss. Defendant Beracasa filed an answer raising the same contentions asserted in the motions to dismiss.

First, the defendants seek dismissal pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a cause of action under RICO. Defendants contend that the complaint fails to properly allege a "pattern of racketeering activity", an essential element in pleading a RICO violation or a RICO conspiracy.

Second, all defendants contend that the court lacks jurisdiction over the subject matter and move the court to dismiss plaintiff's complaint pursuant to the doctrine of *forum non conveniens.*

Third, defendants TFV, BICL and Divinco contend that plaintiff's complaint fails to properly allege breach of contract and fraudulent conveyance.

Fourth, and last, defendants TFV, BICL and Beracasa move to dismiss plaintiff's complaint pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, for lack of personal jurisdiction.

■ Section 1964(c) of Title 18, grants a private right of action to any person "injured in his business or property by reason of a violation of Section 1962." Section 1962 in turn, makes it unlawful to invest, in an enterprise engaged in interstate commerce, funds "derived from a pattern of racketeering activity," to acquire or operate an interest in any such enterprise through "a pattern of racketeering activity" or to conduct or participate in the conduct of that enterprise "through a pattern of racketeering activity." Section 1961 defines "racketeering activity" to mean any

of numerous acts "chargeable" or "indictable" under enumerated state and federal laws, including the federal mail and wire fraud statutes. Section 1961(5) further states that "a pattern" of racketeering activity requires proof of at least two acts of racketeering within ten years. *Fleet Management Systems, Inc. v. Archer-Daniels-Midland Co., Inc.,* 627 F.Supp. 550 (D.C.Ill.1986).

Since the initial passage of the RICO statute, court decisions have indicated a concern over the expansive potential of the wording of the statute, which allows a federal cause of action in any case involving two or more related acts "indictable" under state and federal law. The Legislative history of the Act clearly indicates what Congress intended when it enacted RICO; namely to halt infiltration of legitimate business by organized crime. The problem Congress confronted was to draft the statute so that it could achieve this goal without it being "void for vagueness" or overbroad in its application. *United States v. Aleman,* 609 F.2d 298 (7th Cir.1979).

In Title IX of the Organized Crime Control Act of 1970, Pub.L. 91–452, (RICO) the stated purpose is "to seek the eradication of organized crime in the United States. . . . by establishing new penal provisions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime."

The ABA Report of the Ad Hoc Civil RICO Task Force of the ABA Section of Corporation, Banking and Business Law 69 (1985) (hereinafter cited as ABA Report) on civil RICO explains that:

"[i]n an attempt to insure the constitutionality of the statutes, Congress made the central proscription of the statute the use of a "pattern of racketeering activities" in connection with an "enterprise," rather than merely outlawing membership in the Mafia, La Cosa Nostra, or other organized criminal syndicates. "Racketeering" was defined to embrace a potpourri of federal and state criminal offenses deemed to be the type of criminal activities frequently engaged in by

mobsters, racketeers and other tradition-
al members of "organized crime." The
"pattern" element of the statute was de-
signed to limit its application to planned,
ongoing, continuing crime as opposed to
sporadic, unrelated, isolated criminal epi-
sodes. The "enterprise element, when
coupled with the "pattern" requirement,
was intended by the Congress to keep
the reach of RICO focused directly on
traditional organized crime and compara-
ble ongoing criminal activities carried out
in a structured, organized environment.
The reach of the statute beyond tradi-
tional mobster and racketeer activity and
comparable ongoing structured criminal
enterprises, was intended to be inciden-
tal, and only to the extent necessary to
maintain the constitutionality of a stat-
ute aimed primarily at organized crime."
ABA Report at 71–72.

The ABA Report makes it clear that
RICO is intended to target organized
crime, and not legitimate business. The
wording of the statute, however, makes it
possible for those involved in ordinary com-
mercial disputes to file a racketeering
charge against another person by merely
alleging two acts of fraud involving the
wires or mails. The reason for this is
clear. Case interpretation of the statute in
this circuit has traditionally held that any
two acts of "racketeering activity" (such as
mail and wire fraud) occurring within ten
years of each other could constitute a "pat-
tern of racketeering activity", so long as
the acts are connected by some common
scheme, plan, or motive. *United States v.
Starnes*, 644 F.2d 673 (7th Cir.1981).

The fundamental question, then, is
whether the apparently unambiguous lan-
guage of the statute can (and should) be
read in a manner consistent with this clear
legislative history. In *United States v.
Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69
L.Ed.2d 246 (1981), the Supreme Court not-
ed that in construing the scope of a statute,
its language, if unambiguous, must be re-
garded as conclusive "in the absence of 'a
clearly expressed legislative intent to the
contrary'." *Fleet Management*, supra.

In view of the definitional problems asso-
ciated with a statute aimed solely at orga-
nized crime, this court believes that the
"pattern" requirement, though arguably
unambiguous on its face, should be defined
consistent with Congressional intent.

A pattern requirement that is properly
developed to comport with Congressional
intent is the best approach in light of *Sedi-
ma v. Imrex Co., Inc.*, —— U.S. ——, 105
S.Ct. 3275, 87 L.Ed.2d 346 (1985). As the
Supreme Court noted in *Sedima*, although
the statute should be "liberally construed
to effectuate its remedial purposed," it has
been used to reach cases well beyond what
Congress intended.

"The extraordinary uses to which civil
RICO has been put appear to be primari-
ly the result of the breadth of the predi-
cate offenses, in particular the inclusion
of wire, mail, and securities fraud, and
the failure of Congress and the court to
develop a meaningful concept of 'pat-
tern'."

*Sedima*, supra.

This statement provides a clear invitation
to define the "pattern" requirement con-
sistent with legislative intent. Congress
has unequivocally mandated that mail and
wire fraud be included as predicated of-
fenses; this cannot be altered. The con-
cept of a "pattern of racketeering activity",
however, can and should be interpreted to
confine its reach to the type of conduct
Congress had in mind. *Fleet Manage-
ment*, supra.

The legislative history gives some indica-
tion as to how the "pattern" requirement
should be interpreted.

"As many commentators have pointed
out, the definition of a 'pattern of racke-
teering activity' differs from the other
provisions in § 1961 in that it states that
a pattern requires at least two acts of
racketeering activity, § 1961(5), not that
it means two such acts. The implication
is that while two acts are necessary, they
may not be sufficient. Indeed, in com-
mon parlance two of anything do not
generally form a pattern. The legisla-
tive history supports the view that two

isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of RICO is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combined to produce a pattern." *S.Rep. No.* 91–617 (1969). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship. So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern." 116 *Cong. Rec.* 18940 (1970). Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. *Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).

*Sedima,* supra.

In addition, the ABA Report states the "[t]he 'pattern' element of the statute was designed to limit its application to planned, ongoing, continuing crime as opposed to sporadic, unrelated, isolated criminal episodes." *ABA Report,* at 72. As set forth in the Senate Report, the bill was not aimed at sporadic activity; rather, "the infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." *Fleet Management,* supra.

The ABA Report suggests that to effectuate this legislative intent, "pattern" should be interpreted as requiring that (i) the racketeering acts be related to each other, (ii) they be part of some common scheme, and (iii) some sort of continuity between the acts or a threat of continuing criminal activity be shown.

Despite *Sedima* and clear legislative indications that a "pattern" requires something more than two acts of racketeering activity, many courts continue to hold that *Sedima's* broad language mandates the conclusion that any two related acts can constitute a pattern. For instance, in *R.A. G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir.1985), the Fifth Circuit rejected defendant's argument that two related acts of mail fraud were not sufficient to constitute a "pattern of racketeering activity." Stating that "the broad language of the statute and the *Sedima* decision provide us with clear guidance," the court held that because the alleged acts of mail fraud were related, plaintiff's complaint stated a civil RICO claim.

Similarly, in *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp 1167 (S.D.N.Y. 1985), a New York district court held that:

> "Although it is true that "two isolated acts of racketeering activity do not constitute a pattern," *Sedima,* supra, when two acts which relate to each other and arise out of the same scheme are alleged, the requirement of pleading a "pattern of racketeering activity" has been met."

619 F.Supp. at 1170.

These cases all rely on what is perceived to be the unambiguous meaning of the words "pattern of racketeering activity" and *Sedima's* language.

At least two courts, however, have reached a different result. In *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985), it was held that the term "pattern":

> connotes similarity, hence the cases' proper emphasis on relatedness of the constituent acts. But "pattern" also connotes a multiplicity of events: Surely the continuity inherent in the term presumes repeated criminal activity. It places a real strain on the language to speak of a

single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity.

615 F.Supp. at 833.

In *Northern Trust,* the court dismissed plaintiff's RICO claim because it alleged two acts of mail fraud in furtherance of a construction kickback scheme—Inryco's mailing the subcontract to Century and Century's mailing a kickback check to Ranke—the two specific acts involved only one kickback scheme. The court further noted that even if the three additional kickback payments were also mail fraud violations, "they still implemented the same fraudulent scheme as the first two mailings and the single scheme does not appear to represent the necessary pattern of racketeering activity." *Id.*

This approach was applied one month later in *Morgan v. Bank of Waukegan,* 615 F.Supp. 836 (N.D.Ill.1985), where it was similarly held that a single plot to divest investors of their initial cash investment and their home, put up as security for loans for the venture, did not satisfy the "pattern" requirement even where numerous acts of mail and wire fraud committed over a four year period were alleged in the complaint. The court held that only if the complained-of acts could somehow be said "to represent repeated criminal activity, not merely repeated acts to carry out the same criminal activity" would the "pattern" requirement be met. *Id.*

In apparent concurrence with the *Northern Trust* and *Morgan* approach is *Lipin Enterprises, Inc. v. Lee,* 625 F.Supp. 1098 (N.D.Ill.1985). In that case, it was held that a list of twelve alleged acts of mail and wire fraud were insufficient to establish a pattern.

The court continued:

Plaintiff must allege more than isolated acts or sporadic activity to show that the affairs of an enterprise were conducted through a pattern of racketeering activity. Citing the legislative history of RICO, the Supreme Court recently stressed the factors of continuity plus relationship in a RICO pattern.

Clearly rejecting this last approach, however, is *Trak Microcomputer Corp. v. Weane Brothers,* 628 F.Supp. 1089 (N.D.Ill. 1985). In *Trak,* plaintiffs charged the defendants with at least two acts of mail and wire fraud in furtherance of a scheme to defraud the plaintiffs and illegally obtain microcomputer technology from plaintiffs. Citing *Northern Trust,* defendants argued that because only one scheme was involved, the plaintiffs failed to allege a "pattern of racketeering activity." *Trak* rejected defendants' argument and held as follows:

"This court agrees with Judge Shadur's analysis of RICO and *Sedima* insofar as it states that more than a mere counting of racketeering activity is necessary to determine whether a pattern of racketeering activity has been stated. The criminal acts must demonstrate both a continuity and relationship. However, this court does not agree with the suggestion that a pattern of racketeering activity cannot be established with respect to a single fraudulent scheme.

In determining the meaning of a pattern of racketeering activity, this court is bound to the language of the RICO statute. That act defines what a racketeering activity is. The act does not suggest that a pattern of racketeering activity means a pattern of fraudulent schemes; it merely requires a pattern of racketeering activity. *Sedima* does not compel a contrary interpretation. Nothing in the language of *Sedima* suggests that in order to find a pattern of racketeering activity, a pattern of fraudulent schemes must be pled. Rather, *Sedima* only requires that the racketeering activity be continuous and related.

This court finds that the plaintiffs have alleged a pattern of racketeering activity. Plaintiffs allege that the defendants engaged in numerous acts of racketeering activity which were continuous over an identified period of time and which were related to one another in furtherance of the alleged fraudulent scheme. These allegations satisfy the continuity plus relationship standard of *Sedima.*"

A recent 11th Circuit opinion which adopted the same approach as the *Trak* court is *Bank of America v. Touche Ross & Co.*, 782 F.2d 966 (11th Cir.1986). In *Bank of America*, plaintiffs charged that defendants prepared false financial statements and reports that they knew would be mailed to plaintiff for the purpose of inducing plaintiff to extend credit to International Horizons. Subsequently, International Horizons filed for bankruptcy that resulted in a loss to plaintiff of approximately $16.7 million in unpaid loans and legal expenses. In this case plaintiff alleged nine separate acts of wire and mail fraud, involving the same parties, over a period of three years. Defendants urged the court to adopt a rule under which the predicate acts must occur in different criminal episodes in order to satisfy the pattern requirement, since in this case the alleged acts were part of a single scheme.

In reversing the district court decision which was handed down before *Sedima*, the 11th Circuit held that:

"[d]efendants' interpretation, however, not only ignores the language of § 3575(e) quoted by the *Sedima* court but also contradicts the rule of this circuit. Acts that are part of the same scheme or transaction can qualify as distinct predicate acts.

The standard which has been applied in this circuit is whether each act constitutes "a separate violation of the [state or federal] statute" governing the conduct in question.... If distinct statutory violations are found, the predicate acts will be considered to be distinct, irrespective of the circumstances under which they arose. *United States v. Watchmaker*, 761 F.2d 1459, 1475 (11th Cir.1985)."

782 F.2d at 971.

■ As stated above, for a private civil action to lie, the plaintiff must have been injured by a pattern of racketeering activity. Such a pattern is established by a showing that a party has committed two "indictable" acts. 18 U.S.C. § 1961(1). A federal grand jury can only return an in-

dictment when there is probable cause, or a reasonable probability, that a crime has been committed. *United States v. Cox*, 342 F.2d 167, 170 (5th Cir.) *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

■ Thus, to properly plead an action under the treble damages provision of RICO, a party must allege two acts of racketeering with enough specificity to show that there is probable cause the crimes were committed. That determination is possible only if the factual basis of the predicate acts is set out with specificity.

### I. *Failure to State a Cause of Action for Violation of Rico.*

■ The complaint alleges various instances of wire fraud in violation of 18 U.S.C. § 1341. All that is needed for violation of this section are a scheme to defraud and at least one jurisdictional telephone call made in furtherance of that scheme. *U.S. v. Patterson*, 534 F.2d 1113, (C.A.Tex. 1976), *cert. denied*, 429 U.S. 942, 97 S.Ct. 361, 50 L.Ed.2d 313 (1976).

■ The instances of wire fraud alleged in plaintiff's complaint, plead simply a use of the wires, but lack the necessary specificity and particularity to support a showing of probable cause of intent to defraud.

The telexes attached to plaintiff's complaint evidence a normal transaction between two corporations, i.e. an exchange of capital for stock. Plaintiff alleges that the transactions were a sham since the corporation receiving the stock received nothing for its money. Yet plaintiff does not support this allegation with any fact that would lead to this conclusion, and hence falls below what is required to establish probable cause.

Also, plaintiff alleges that wire transfers of funds were made from BICL to various individuals. *Complaint* paragraph 44(c). Plaintiff alleges that these transfers were made in order to effectuate the unlawful scheme but fails to allege any facts to

show how the transfers advanced the scheme.

Lastly, plaintiff alleges that upon information and belief, in order to effectuate the fraudulent scheme, defendants Gibbs and Beracasa used, or caused to be used, telephones, telexes and wire transfers on numerous other occasions, the precise dates of which are unknown but will be discovered in the course of discovery. *Complaint* paragraph 45.

This is deficient under the probable cause standard as stated above. Because of the nature of the charge, the court should not accept allegations made on information and belief. *Moore's Federal Practice*, paragraph 9.03 at 9–26 (1983). A complaint alleging RICO, like a complaint alleging fraud, should be filed only after a wrong is reasonably believed to have occurred. It should be a vehicle to right a wrong, not to find one. *Segal v. Gordon*, 467 F.2d 602, 607 (2nd Cir.1972).

■ Finally, for the reasons stated above, the court is of the opinion that plaintiff's entire complaint lacks the necessary specificity and particularity to sustain a RICO cause of action. The graveman of plaintiff's complaint is wire fraud resulting in a RICO injury. 18 U.S.C. § 1962(c). Like the predicate acts, plaintiff's complaint is based on conclusory allegations absent the necessary specificity and particularity. As an example, plaintiff alleges that "[a]t some point between September 1980, and late 1983, defendant Gibbs ..... devised, began implementation of, engaged in a scheme to loot BICL." *Complaint* paragraph 22. Such a broad time frame certainly lacks the requisite degree of specificity and particularity.

In arguing against the motion to dismiss, plaintiff maintains that a RICO cause of action exists citing *Bank of America*, supra, which held that the predicate acts can be part of the overall scheme to defraud.

Notwithstanding the basic distinction that *Bank of America* involved acts of mail fraud while the instant case involved alleged acts of wire fraud, the two cases are distinguishable.

In *Bank of America* all of the predicate acts of mail fraud were perpetrated directly against the plaintiff by the defendant. In the instant case, all of the alleged acts of wire fraud involved the use of the wires between various defendants in the alleged scheme. While the court is aware that under the wire fraud statute the wire communication need not be directed to the victim of the fraudulent scheme, *U.S. v. Wise*, 553 F.2d 1173 (8th Cir.1977), it does have significance when used to establish probable cause as required herein.

In *Bank of America* the plaintiff had in its possession alleged fraudulent financial reports which could be compared with the true figures to establish probable cause of fraud. Moreover, an allegation of probable cause would be bolstered by the fact that the communications were directed to the plaintiff.

In the instant case, plaintiff alleges acts involving the use of the wires between various defendants as contrasted with wires from these defendants to plaintiff.

However, plaintiff has not alleged how these wire communications advanced the scheme. This falls short of establishing probable cause.

In conclusion, the court is of the opinion that plaintiff's complaint should be dismissed for failure to plead fraud with specificity and particularity as required by the Federal Rules of Civil Procedure with regard to both the predicate acts and the overall complaint. Since the predicate acts fail, plaintiff's complaint has not satisfied the pleading requirements of RICO, and hence, plaintiff's complaint must also be dismissed pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim.

## II. *Forum Non Conveniens* Considerations

The defendants contend that jurisdiction is not properly vested in the Southern District of Florida and should be dismissed pursuant to the doctrine of *forum non*

*conveniens.* In support of that argument, defendants have asserted that:

1. The certificates of deposit in question were purchased by a bank chartered in and by the nation of Venezuela which is presently owned and operated by the government of Venezuela.

2. The purchases were made by a corporation organized and existing under the laws of the Bahamas.

3. The loans, conveyances and transactions alleged in the complaint, and on which the obligations are owed, all took place between entities organized and doing business outside of the United States.

4. The witnesses, discovery documents and the subject of this suit are located in the Bahamas.

5. There is no nexus between plaintiff's claim and the Southern District of Florida.

6. All evidence on the central question of the legitimacy of BICL and its actions exists in the Bahamas.

For support of their argument, the defendants rely on *Miskow v. Boeing Co.,* 664 F.2d 205 (9th Cir.1981) *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed.2d 138 and *Ionescu v. E.F. Hutton & Co. (France),* 465 F.Supp. 139 (S.D.N.Y.1979).

For support of its argument, the plaintiff relies on *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed 1055 (1947); *C.A. La Seguridad v. Transytur Line,* 707 F.2d 1304 (11th Cir.1983); *Morley v. Cohen,* 610 F.Supp. 798, 806 (D.Md.1985); and *Soltex Polymer Corp. v. Fortex Industries, Inc.,* 590 F.Supp. 1453 (E.D.N.Y.1984).

The court, having considered the arguments of the parties and being fully advised, finds that the law as stated in *Gilbert,* supra, governs this case. The court further finds that application of the factors listed in *Gilbert* and later clarified in *C.A. La Seguridad* to the case at bar would require a transfer and not dismissal pursuant to *forum non conveniens.* Since this action has been dismissed for the reasons set forth above, the issue of venue is moot at this time.

It may be helpful to the parties however, to consider the following with respect to the issue of whether or not to file an amended complaint in the Southern District of Florida.

■ The determination of the *forum non conveniens* question is within the sound discretion of the trial court and when it is based on a reasonable consideration of the *Gilbert* factors, it will not be disturbed. *Piper Aircraft v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

■ After making the requisite analysis of factors to be considered under *Gilbert* and *C.A. La Seguridad,* the court is of the opinion that an adequate alternative forum does exist.

Under Title 18 U.S.C. § 1965(a), a RICO action may be instituted in any district in which a defendant resides, is found, has an agent or transacts his affairs. *Soltex,* supra. A RICO claim may also be brought where all defendants reside or where the cause of action arose. 28 U.S.C. § 1391(b). Since all of the transactions alleged in the complaint took place between New York and foreign countries, it would be proper to file the action in New York since that is where the cause of action arose.

The certificates of deposit which are in issue, specify that "[t]his instrument shall be governed by and construed in accordance with the laws of the State of New York." It is also specified that "[p]resentation at maturity may be made through the Bank of America, 41 Broad Street, New York, New York 10004". It is obvious that there is a much stronger nexus between New York and this action than there is with Florida. These facts are important when applying the *Gilbert* factors.

Applying the facts to the private interest of the litigants, the court is of the opinion that the balance tips strongly in favor of New York. The ease of access to proof would be the same in either state, for witnesses and evidence located abroad. However, the bulk of the evidence in this country is located in New York, which would certainly be more accessible than Florida.

**1178**

Therefore, in view of the aforementioned analysis, the court is of the opinion that should plaintiff be able to satisfy the pleading requirements of RICO as outlined above, the appropriate forum to bring this action would be New York and not Florida.

Having considered defendants' motions, the memoranda of law and argument of counsel the court does hereby:

ORDER and ADJUDGE that defendants' motions to dismiss plaintiff's complaint pursuant to Rules 9(b) and 12(b)(6), Federal Rules of Civil Procedure, be, and they are, granted, without prejudice to plaintiff to refile an amended complaint in the Southern District of Florida; or a new complaint in an appropriate forum, within 30 days of the date of this order.