**J.G. WILLIAMS, INC., Plaintiff,**

v.

**REGENCY PROPERTIES, LTD., Gwinnett Financial Services, Inc., Gwinnett Federal Savings & Loan Association, and Century 21 Regal Realty, Inc., Defendants.**

Civ. A. No. 87–161A.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 26, 1987.

---

**3.** P & D's Motion to Strike and the papers responsive to it are in essence a summary judg- ment proceeding.

Jenkins, Bergman & Darroch, Atlanta, Ga., for plaintiff.

Swift Currie McGhee & Hiers, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This is an action brought by plaintiff alleging (1) common law fraud, (2) violation of the federal Racketeer Influenced Corrupt Organizations Act (federal RICO), (3) violation of the Georgia Racketeer Influenced Corrupt Organizations Act (Georgia RICO), and (4) a state law claim for money had and received.

The case arose from a real estate transaction in which plaintiff, which is in the business of constructing single family homes, purchased from defendants, the owners and the realtor of the property, two lots of land in Gwinnett County, Georgia. The crux of the claims is plaintiff's allegation that defendants misled plaintiff into believing the two lots were suitable for single family housing when defendants knew that a highway or "spur" connecting Georgia Highway 400 and Interstate Highway 85 would traverse through the "Regency Lake" subdivision of which the two lots were a part.

Prior to filing an answer, defendants filed a motion to dismiss and/or motion for more definite statement challenging the sufficiency under Rule 9(b), Fed.R.Civ.P. of the allegations of fraud in Count One and the alleged violations of the RICO statutes in regard to Counts Two and Three. The motion for more definite statement under Rule 12(e), Fed.R.Civ.P. related to Count Four of the complaint.

This court in its order dated April 21, 1987 granted defendants' motion and required more specificity with regard to each count. The court dismissed the case subject to the right of plaintiff to amend the complaint to overcome pleading defects not later than May 8, 1987. The court observed that if the pleadings were still insufficient, defendants could renew their motion, or move to dismiss on new grounds.

Plaintiff filed an amended complaint on May 8, 1987. Defendants admit that plaintiff has corrected the errors in pleading counts one and four.[1] Currently before the court is defendants' Motion to Dismiss Counts Two and Three of the complaint, the federal and state RICO claims, for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P. Plaintiff has also moved to extend dis-

---

1. Defendants Regency Properties, Ltd. ("Regency"), Gwinnett Financial Services, Inc. ("Gwinnett Financial"), and Gwinnett Federal Savings & Loan Association withdrew their motion as to count one in their brief in support filed May 21, 1987. They withdrew their motion as to count four in their reply brief filed June 19, 1987. In its brief in support of motion to dismiss, defendant Century 21 Regal Realty, Inc. ("Century 21") adopted and incorporated the position of the other defendants. In the absence of any brief by defendant Century 21 supporting the motion to dismiss count four, the court deems that any such motion by Century 21 too is withdrawn.

covery four months from the date of the court's ruling on the motion to dismiss.

## FACTS

The facts plaintiff alleges form the basis for its claims are essentially set forth in paragraphs three through fifty-eight of the Amended Complaint. Plaintiff alleges that defendant Regency was the owner of the lots located in the Regency Lake Subdivision. Complaint ¶ 3. Plaintiff alleges that defendants Regency, Gwinnett Financial and Gwinnett Federal Savings & Loan were owners of the lots in question and became aware in March 1986 that the Georgia Department of Transportation ("D.O.T.") planned to build a roadway or "spur" between Georgia Highway 400 and Interstate Highway 85 that would proceed near or through this subdivision. *Id.* ¶ 4.

Plaintiff alleges that the president of Regency encouraged the Georgia D.O.T. to create a right-of-way through the subdivision. Plaintiff alleges also that Century 21, the alleged broker, and Gwinnett Federal, the alleged construction financier, also became aware of the highway construction plans. *Id.* ¶¶ 22–34; 51–57.

Plaintiff alleges that Gwinnett Federal improperly loaned money to Gwinnett Financial and that an employee of Gwinnett Federal acting on behalf of Gwinnett Financial called plaintiff's counsel to pressure counsel to prematurely release funds from an escrow account to Gwinnett Financial. *Id.* ¶¶ 53, 55.

Regency allegedly advertised the property in Atlanta area newspapers. *Id.* ¶ 8. These advertisements were allegedly placed by United States mail. *Id.* Plaintiff allegedly learned of the properties and negotiated for their purchase between April 1986 and July 1986. *Id.* ¶ 9.

Plaintiff allegedly identified himself as a builder of single family homes. *Id.* Plaintiff alleges that he learned from the president of defendant Regency that the lots were suitable for single family residential construction. *Id.* Plaintiff alleges that he received from Regency representatives informational materials including covenants and brochures relating to the subdivision. *Id.* ¶ 11.

In August 1986, plaintiff allegedly purchased the lots through Century 21. *Id.* ¶ 18. Plaintiff alleges it was unable to obtain construction financing for the two lots due to the plans for the "spur" and the right-of-way. *Id.* ¶ 19.

Plaintiff alleges the following "predicate acts" as forming a "pattern of racketeering activity":

### 8.

(a) In April 1986 Regency caused certain advertisements to run in Atlanta newspaper under the category of "subdivision lots for sale" for the Regency Lake Subdivision.

(b) Regency placed the ad in the newspaper by placing a phone call to the Atlanta newspaper.

(c) Regency knew when the ad was placed that the U.S. mails would be used for payment of this service.

(d) The Atlanta newspaper mailed to Regency, via the U.S. Postal Service, the charges for the ad(s).

(e) Regency mailed, via the U.S. Postal Service, its payment for this ad.

(f) The ad listed for sale property in the Regency Lakes Subdivision, including lots 7 and 8, as property suitable for residential development.

### 40.

(a) Defendants Gwinnett Financial Services and Regency Properties, Ltd. caused the documents entitled "Facts about Regency Lake" and the Regency Covenants to be distributed in person by Century 21—Regal Realty at the subdivision and through the mails.

(b) These documents were mailed to prospective purchasers other than plaintiff and Jim Williams.

(c) These documents were mailed to plaintiff and Jim Williams.

### 50.

(a) On August 27, 1986, James Pack executed the Quit Claim Deeds attached hereto as Exhibits "D" and "E" and incorporated herein by reference as Presi-

dent of Gwinnett Federal Savings & Loan Association.

(b) Exhibits "D" and "E" were either received by James Pack or mailed by James Pack using the U.S. mail.

(c) All of James Pack's dealings with Exhibits "D" and "E" were in his capacity as President of Gwinnett Federal Savings & Loan Association.

### 53.

(a) Because of the relationship between Gwinnett Federal Savings & Loan and Gwinnett Financial Services, Inc., and because of James Pack's operation as president of each corporation, Gwinnett Federal Savings & Loan Association and Gwinnett Financial Services, Inc. are "affiliates" as described in Title 12 of the U.S. Code.

(b) Gwinnett Federal Savings & Loan Association loaned money to Gwinnett Financial Services, Inc. and/or Regency and took as security a "low quality asset" in the form of property that it knew could not be resold within the restrictive covenants imposed by Gwinnett Financial Services and Regency.

(c) Gwinnett Federal Savings & Loan Association failed to report this transaction to the Federal Home Loan Bank as required by law.

(d) In an effort to rid itself of this "low quality asset," Gwinnett Federal Savings & Loan Association failed to disclose the existence of the "spur" to Plaintiff and knowingly allowed Regency, Gwinnett Financial Services, Inc., James Pack and Richard Krebs to defraud Plaintiff.

### 54.

Gwinnett Federal Savings & Loan Association actively participated in this fraud by executing Quit Claim Deeds when it mailed to plaintiff's attorney or received from plaintiff's attorney through the mail.

### 74.

Said use of the United States Mails and interstate communications equip-ment in furtherance of the Defendants' scheme to defraud the Plaintiff constitute two or more acts of mail and/or wire fraud and thus serve as the "Predicate Acts" under the Federal and State RICO statute.

### 75.

The Defendants, in conjunction with Richard Krebs, James Pack, Kathy Perry, Susan Herd, and Judith McNeely, have engaged in a pattern of racketeering activity by:

(a) using the mails and telephone as set forth above to induce the Plaintiff to purchase property which the Defendants knew or reasonably should have known could not be used for the purpose of constructing residential homes as outlined in the restrictions placed on the property by the Defendants or with the Defendants' knowledge.

(b) using the mails and telephone as set forth above to induce the Plaintiff to purchase property which was improperly held as security by Gwinnett Federal Savings and Loan Association as collateral for a loan to Gwinnett Financial Services, Inc. and Regency, said collateral being a "low quality asset" as defined by law.

(c) using the mails and telephone as set forth above to induce the Plaintiff to purchase property as part of a scheme to cover up the existence of bank fraud under 18 U.S.C. 1344, by which the Defendants, in conjunction with Richard Krebs, James Pack, Kathy Perry, Susan Herd, and Judith McNeely, have allowed the investors, stockholders, and depositors of Gwinnett Federal Savings and Loan Association to hold real estate as a security which could not be sold or otherwise used for the purposes to which it was restricted under Exhibit "B".

The following constitutes plaintiff's allegation of "enterprise":

### 76.

The Defendants, in conjunction with Richard Krebs, James Pack, Kathy Perry, Susan Herd, and Judith McNeely,

have formed an enterprise for the mutual financial benefit derived from the pattern of racketeering activity by means of:

(a) The documents attached hereto as Exhibits "A" through "E" and referred to above,

(b) The exclusive agreement that allows Century 21, Susan Herd, and Judith McNeely to list and sell lots 7 and 8,

(c) The joint ownership of the property by Gwinnett Financial Services and Regency,

(d) The overlapping agency of Richard Krebs on behalf of Gwinnett Financial Services and Regency,

(e) The overlapping agency of James Pack as an officer of Gwinnett Financial Services and Gwinnett Federal Savings and Loan Association,

(f) The overlapping agency of Kathy Perry, an agent of Gwinnett Financial Services and Gwinnett Federal Savings and Loan Association, an employee of Gwinnett Financial Services and Gwinnett Federal Savings and Loan Association, and/or a person who was directed to act by James Pack as an officer of Gwinnett Financial Services and Gwinnett Federal Savings and Loan Association,

(g) The inadequate security of lots 7 and 8 as held by Gwinnett Federal Savings and Loan Association to secure loans made to Gwinnett Financial Services and Regency.

Amended Complaint.

## DISCUSSION

### A. *Federal RICO Claim*

In order to state a private claim for relief under RICO, a person must allege that he has been injured in his business or property by reason of a violation of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c). The essential elements of a claim, such as this, alleging a violation of section 1962(c) are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S.

479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

Defendants attack the Amended Complaint on several grounds contending plaintiff has included insufficient pleading of (1) the predicate act requirement, (2) the "enterprise" requirement, and (3) the "pattern of racketeering activity" requirement.

The court finds that plaintiff has alleged predicate acts involving mail fraud sufficient to survive defendants' Rule 12(b)(6) motion. A court should grant a 12(b)(6) motion only where plaintiff can prove no set of facts entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Likewise, plaintiff has sufficiently pleaded the "enterprise" requirement of a civil RICO claim. *Id.; United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981).

The federal RICO Act defines "racketeering activity" to include, among other acts, any act which is indictable under 18 U.S.C. §§ 1341 and 1343, the mail and wire fraud statutes. 18 U.S.C. § 1961(1). A "pattern of racketeering activity requires at least two acts of racketeering activity." *Id.* Defendants contend that plaintiff has failed in its amended complaint to adequately allege sufficient predicate acts constituting a "pattern of racketeering activity" to satisfy the "continuity plus relationship" requirement reiterated by the Supreme Court in *Sedima*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14. The definition of "pattern of racketeering activity" in § 1961 "*requires* at least two acts of racketeering activity." § 1961(5). *Id.* (emphasis in original). However, as the Supreme Court pointed out in *Sedima*, the commission of two predicate acts is an essential prerequisite, but does not conclusively establish the existence of a pattern. *Id.*[2] The court indicated that the combination of continuity and relationship are needed to find a pattern. *Id.* (quoting S.Rep. No. 91–617, 91st Cong., 1st Sess., 158 (1969)).

After *Sedima*, courts have taken essentially three approaches to the "continuity

---

2. "The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern'." *Id.*

plus" requirement. The first might be generally called the "single/multiple episode" test in which some courts have ruled that a single fraudulent scheme lacks the requisite continuity to constitute a pattern. *See discussion Sheftelman v. Jones*, 636 F.Supp. 263, 267 (N.D.Ga.1986) (Freeman, J.); *see also Fleet Management Systems v. Archer–Daniels Midland Co.*, 627 F.Supp. 550 (C.D.Ill.1986) (single scheme to illegally market plaintiff's computer insufficient to state a pattern); *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 831–33 (N.D.Ill.1985) (two acts of mail fraud in conjunction with single kickback scheme does not constitute a pattern of racketeering activity). The Eleventh Circuit has not adopted this approach.

Second, a few courts have held that any two related acts can constitute a pattern. *See R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir.1985) (rejecting defendant's argument that two related acts of mail fraud were not sufficient to constitute a "pattern of racketeering activity"); *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167 (S.D.N.Y.1985) (when two acts which relate to each other and arise out of the same scheme are alleged, the requirement of pleading a "pattern of racketeering activity" has been met).

More consistent with the legislative history of the Act, the Eleventh Circuit has struck a middle position between the two approaches discussed above. In *Bank of America v. Touche Ross & Co.*, 782 F.2d 966 (11th Cir.1986), plaintiffs charged that defendants prepared false financial statements and reports that they knew would be mailed to plaintiff for the purpose of inducing plaintiff to extend credit to International Horizons. Subsequently, International Horizons filed for bankruptcy that resulted in a loss to plaintiff or approximately $16.7 million in unpaid loans and legal expenses. In its complaint, plaintiff alleged nine separate acts of wire and mail fraud, involving the same parties, over a period of three years. Defendants urged the court to adopt a rule under which the predicate acts must occur in different criminal episodes in order to satisfy the pattern requirement, since in that case the alleged acts were part of a single scheme.

In rejecting defendants' position, the court held that:

[d]efendants' interpretation, however, not only ignores the language of § 3575(e) quoted by the *Sedima* court but also contradicts the rule of this circuit. Acts that are part of the same scheme or transaction can qualify as distinct predicate acts.

The standard which has been applied in this circuit is whether each act constitutes "a separate violation of the [state or federal] statute" governing the conduct in question.... If distinct statutory violations are found, the predicate acts will be considered to be distinct, irrespective of the circumstances under which they arose. *United States v. Watchmaker*, 761 F.2d 1459, 1475 (11th Cir.1985).

*Bank of America*, 782 F.2d at 971; *accord Trak Microcomputer Corp. v. Wearne Brothers*, 628 F.Supp. 1089 (N.D.Ill.1985) ("The Act does not suggest that a pattern of racketeering activity means a pattern of fraudulent schemes; it merely requires a pattern of racketeering activity.").

However, the Eleventh Circuit, consistent with *Sedima*, has expressly adopted the "threat of continuing activity" as a prerequisite to finding a pattern of activity rejecting the position that two isolated acts of racketeering activity constitute a pattern. *Bank of America, supra* 782 F.2d at 971; *see also Rojas v. First Bank National Association*, 613 F.Supp. 968, 971 n. 1 (E.D.N.Y.1985) (for a similar formulation). The Eleventh Circuit in *Bank of America* noted that "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (quoting *Sedima supra*, n. 14). The court in that case determined the threat of continuing activity on the basis of the relationship between the parties, the time frame of the predicate acts, and the number of predicate acts. *Bank of America supra* at 971. The court concluded that a pattern was present because the plaintiffs alleged "nine separate acts of wire and mail fraud, involving the same

parties over a period of three years, for the purpose of inducing the banks to extend credit to International Horizons." *Id.*

The approach suggested by the Eleventh Circuit analysis is that "continuity" requires both temporal separation and relatedness.[3] *See, Sheftelman v. Jones,* 636 F.Supp. at 268; *Kredietbank, N.V. v. Joyce Morris, Inc.,* No. 84–1903 (D.N.J. Jan. 9, 1986) [Available on WESTLAW, DCT database] (two acts form a pattern only where "they are not only sufficiently connected, but also differentiated, to suggest a design or configuration").[4]

In the instant case, plaintiff contends the additional "threat of continuing relationship" requirement is,

> [E]vident by the *knowledge* [of defendants], as of April, 1986 of the spur going through *at least three lots* in the subdivision by the defendants; the *publication* of advertisements for lots suitable for single family homes to the general public falsely representing that the lots were suitable for single-family homes, when in fact, single family homes could not be built as per the Regency Lake Covenants.

Plaintiff's Response Brief at 11 (emphasis in original).

■ The court finds that plaintiff's complaint fails to fulfill the "pattern of racketeering" requirement because it fails to allege in addition to the requisite predicate acts any indication of a "threat of continuing activity." *Bank of America, supra.* The predicate acts alleged here did not occur over the protracted period present in the *Bank of America* case. Indeed, the entire period of the relevant actions in this case spanned only four months. *See Sheftelman* at 268.

The defendants did not target a small group of potential buyers or subject them to frequent solicitations unlike the specific targets of solicitation involved in *Bank of America. Id.* The allegations in the instant case involved newspaper advertisements to the mass market under the category of "subdivision lots for sale". Amended Complaint ¶ 8.

Moreover, plaintiff has not alleged similar conduct on the part of defendants toward any other potential buyers in the past that might hint at some continuity of defendants' actions. The allegations involve only one deal with one individual who purchased lots based on mass advertising and mailings. Plaintiff within the space of four months simply responded to defendants' advertisements, was sent some allegedly false information about the property, concluded the brief negotiations and was refused credit. The acts alleged followed closely in sequence involving only a single victim after plaintiff answered the initial advertisements. Plaintiff's allegations suggest no expansion, no ongoing design, no continuity. Plaintiff's amended complaint fails to sufficiently allege a "pattern of racketeering activity", fails to state a federal RICO claim and must be dismissed.

### B. *Georgia RICO Claim*

Plaintiff admits that its state RICO claim brought pursuant to Ga.Off'l Code Ann. § 16–14–1 *et seq.,* rests *in toto* on the same allegations as its federal RICO claim. The allegations for each section in the complaint are identical.

■ In *Stanton v. Shearson Lehman/American Express, Inc.,* 622 F.Supp. 293, 294 (N.D.Ga.1985) (Hall, J.) this court

---

**3.** Indeed, footnote 14 of *Sedima supra* 473 U.S. at 496, 105 S.Ct. at 3285 demonstrates that the Supreme Court adopted the persuasiveness of statement found in the legislative history that RICO was "not aimed at the isolated offender" but rather an ongoing design. Quoting 116 Cong.Rec. 35193 (1970) (Statement of Rep. Poff).

**4.** The Court in *Kredietbank* stated:
> Where a single criminal act is repeated against a second victim, or repeated in a time and place removed from its first commission,

the two acts arguably suggest a design or configuration, and may satisfy the pattern requirement. But the repetition of an act taken against a single victim or set of victims following closely on the heels of the original wrong, in some circumstances, ... suggests no expansion, no ongoing design, no continuity, such as was the target of Congress in RICO.

*Kredietbank cited in Mullin & Associates Inc. v. Bassett,* 632 F.Supp. 532, 541 (D.Del.1986).

recognized that the Georgia RICO Act was enacted after the federal RICO statute and contains substantially the same operative language and that Georgia courts would follow federal court decisions interpreting the federal RICO Act. Therefore, plaintiff's Georgia RICO claim fails for the same reasons as its federal counterpart. Additionally, mail and wire fraud are not enumerated as "predicate acts" under the definition section of the Georgia RICO statute, *see* Ga.Off'l Code Ann. § 16–14–3(3)(A) and (B). Plaintiff has alleged only mail and wire fraud as predicate acts, thus strengthening the conclusion that plaintiff has alleged insufficient predicate acts to satisfy the "continuity plus relationship" required to make out the "pattern of racketeering activity" element of a RICO violation.

Plaintiff's Georgia RICO claim is dismissed for failure to state a claim.

### C. *Pendent State Law Claims*

Counts One and Four of the Amended Complaint state a claim under Georgia law for fraud and money had and received respectively. This court can exercise pendent jurisdiction over plaintiff's state law claims by virtue of its jurisdiction over plaintiff's RICO claim based on federal question jurisdiction. As detailed above, however, plaintiff's federal RICO claim must be dismissed for failure to state a claim. A federal question no longer exists.[5]

Pendent jurisdiction is a doctrine of the trial court's discretion, not of plaintiff's right. In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court stated that if considerations of judicial economy and convenience and fairness to litigants are not present, a federal court should hesitate to exercise jurisdiction over state claims. The court further commented:

> Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.*, 383 U.S. at 726, 86 S.Ct. at 1139. Although the Eleventh Circuit recognized that *Gibbs* "strongly encourages or even requires dismissal of the state claims" where federal claims are dismissed before trial, the court held that where the statute of limitations has run on the party's state claims, "dismissal of the state claims would be an abuse of discretion." *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir.1984).

The Georgia Legislature has enacted a "savings statute" which allows plaintiffs six months in which to refile their action in state court. The Georgia Code provides in part:

> When any case has been commenced in either state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state ... either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later.

Ga.Off'l Code Ann. § 9–2–61 (Supp.1986).

Although the section was at one time ruled as inapplicable to actions which originated in federal court (*see Blaustein v. Harrison*, 160 Ga.App. 256, 286 S.E.2d 758 (1981)), the section was amended in 1985 to specifically allow a refiling in state court following the dismissal of an action originally commenced in federal court. Moreover, while on its face the statute allows refiling only where the plaintiff dismisses the original action, the Georgia courts have repeatedly held that the section "applies to involuntary as well as voluntary dismissals where the merits are not adjudicated." *Fowler v. Aetna Casualty & Surety Co.*, 159 Ga.App. 190, 192, 283 S.E.2d 69 (1981) (*quoting Bowman v. Ware*, 133 Ga.App. 799, 800, 213 S.E.2d 58 (1975)). *See also, Douglas v. Kelley*, 116 Ga.App. 670, 158 S.E.2d 441 (1967) ("A dismissal of the case by the court on a ground not adjudicating the merits counts as a voluntary dismissal for this purpose.").

In the instant action plaintiff filed its original complaint January 30, 1987 and

---

[5]. Neither plaintiff's original complaint nor its amended complaint contain a jurisdictional allegation. There is no allegation or indication that diversity jurisdiction exists.

its amended complaint May 8, 1987. The operative facts which form the basis of plaintiff's claims occurred between April and August 1986. Not even an entire year passed before plaintiff filed the action. Georgia law provides for a four-year limitations period for both actions for fraud and claims for money had and received. Ga. Off'l Code Ann. § 9–3–31; § 9–3–26. In the absence of a federal question, the court feels no hesitance in dismissing plaintiff's state claims as plaintiff will have the opportunity to refile its complaint in state court. Even if the limitations period had run, the "savings statute" would permit refiling in state court. The court finds that no considerations of judicial economy, convenience or fairness to the litigants mitigate against such action. *Gibbs supra.*

## CONCLUSION

In sum, the court GRANTS defendants' motion to dismiss and DISMISSES plaintiff's pendent state claims as well. This action MOOTS plaintiff's motion for extension of discovery and terminates the case.