**SHARED NETWORK TECHNOLOGIES, INC., Plaintiff,**

v.

**James S. TAYLOR, Defendant.**

Civ. A. No. C87–1016A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 10, 1987.

Larry Dean Thompson, Laura Anne Lewis Owens, King & Spalding, Atlanta, Ga., for plaintiff.

J. Christopher Simpson, Neil Alan Moskowitz, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff brings this action alleging defendant violated the Federal and Georgia Racketeer Influenced and Corrupt Organizations Acts ("RICO"), 18 U.S.C. § 1961 *et seq.*, Ga. Off'l Code Ann. § 16–14–1 *et seq.*, Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c), and the state laws prohibiting money had and received, fraud, conversion and waste of corporate assets. This court's jurisdiction is predicated upon 28 U.S.C. § 1331 insofar as Counts V (federal RICO) and VII (Robinson-Patman Act) of plaintiff's complaint arise under the laws of the United States. Plaintiff requests this court to exercise pendent jurisdiction over the remainder of its claims. Currently before the court is defendant's motion to dismiss counts V and VII of plaintiff's complaint. For the reasons stated herein, the court DENIES defendant's motion as to Count V and GRANTS defendant's motion as to Count VII.

**FACTS**

Plaintiff, Shared Network Technologies, Inc. ("Share Net"), is a Georgia corporation which was incorporated in 1984 to sell shared telecommunication services. Complaint ¶¶ 1, 6. Defendant, James S. Taylor ("Taylor"), acted as president of Share Net

from August 30, 1984 to May 7, 1987. *Id.,* ¶¶ 2, 7. As president, Taylor was the chief operating officer of Share Net and in charge of the company's day-to-day affairs. *Id.,* ¶ 7. Between July and December 1985 Share Net received four invoices from a company known as Bellor Electronics for the sale and installation of electronic equipment. *Id.* ¶ 11. Pursuant to those invoices, Share Net paid at least $593,500.00 to Bellor Electronics or Bellor Communications. *Id.,* ¶ 10. In addition, on or about September 25, 1985, pursuant to an alleged purchase order supposedly issued by Share Net to Bellor Electronics, Share Net paid Bellor Electronics, by check signed by Taylor, $105,000.00. *Id.,* ¶ 12.

Share Net alleges that Bellor Electronics and Bellor Communications are bogus corporations which are not now, and never have been, on-going businesses. *Id.,* ¶ 13. Share Net alleges Bellor Electronics exists in name only as a post office box in Dunwoody, Georgia. *Id.,* ¶ 14. Share Net further alleges that Taylor established and used Bellor Electronics in order to fraudulently induce Share Net to make payments to himself. *Id.,* ¶¶ 21–22. Share Net contends that Taylor improperly authorized Share Net to pay the Bellor invoices, improperly signed the Share Net checks to Bellor Electronics and Bellor Communications, endorsed the Share Net checks written to Bellor and directed that the funds from the checks be deposited into an account controlled by Taylor at the Heritage Bank. *Id.,* ¶¶ 15–16.

Although it paid at least $593,500.00 to Bellor Electronics pursuant to Bellor invoices, Share Net never received the equipment and materials described in the invoices, nor did Bellor perform the services specified in the invoices. *Id.,* ¶ 17. In Count II of its Complaint, Share Net alleges that Taylor made a series of fraudulent misrepresentations to Share Net in order to induce Share Net to pay him money through a nonexistent or bogus business. *Id.,* ¶ 21. Share Net contends that Taylor, with the intent and purpose of deceiving Share Net, fraudulently misrepresented to Share Net that the Bellor invoices should be paid when he knew Bellor was a bogus

business which would not perform pursuant to the invoices. *Id.,* ¶¶ 22–23. Share Net further contends that Taylor, for the purpose of deceiving Share Net, failed to disclose material and important facts regarding the transactions with Bellor to Share Net's officers and directors. *Id.,* ¶¶ 24–25.

In Count V of its Complaint, Share Net incorporates the facts and allegations enumerated above and alleges that Taylor violated federal RICO. Share Net alleges that Bellor Electronics is an enterprise within the meaning of 18 U.S.C. § 1961(4) which is engaged in, or the activities of which affect, interstate or foreign commerce. *Id.,* ¶ 40. Share Net contends that the fraudulent misrepresentations made by Taylor to Share Net represented a scheme and artifice to defraud Share Net which was facilitated by use of the United States mail caused by Taylor and resulting in mail fraud within the meaning of 18 U.S.C. § 1341. *Id.,* ¶ 42. Such mail fraud, Share Net alleges, constituted racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B) and the alleged multiple fraudulent misrepresentations allegedly constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) *Id.,* ¶¶ 43–44. Finally, Share Net alleges that Taylor and his agents, associates, and representatives conducted and conspired to conduct the affairs of Bellor Electronics through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d). *Id.,* ¶ 45.

In Count VII Share Net contends Taylor violated Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c). Incorporating the previously alleged facts, Share Net alleges that during the relevant time period Taylor directed or controlled Bellor Electronics and that Bellor, through Taylor, fraudulently induced Share Net to pay Taylor at least $593,500.00. *Id.,* ¶¶ 63–64. Share Net alleges that neither Taylor nor Bellor rendered services in connection with the bogus purchase of goods, wares or merchandise and that Taylor's receipt of at least $593,500.00 in exchange for this series of bogus sales transactions constituted

an anticompetitive practice in violation of section 2(c) of the Robinson-Patman Act.

Taylor brings this motion to dismiss plaintiff's complaint pursuant to Fed.R. Civ.P. 12(b)(1) for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and failure to comply with the pleading requirements of Fed.R.Civ.P. 9(b). Defendant argues that Share Net's federal question jurisdiction rests on Counts V and VII of its complaint and that the allegations of the complaint, taken as true for purposes of ruling on the motion, do not set forth a cause of action under the federal RICO or antitrust statutes.

## DISCUSSION

### I. *The Motion*

Although defendant moves this court to dismiss plaintiff's complaint pursuant to Rules 12(b)(1), 12 (b)(6) and 9(b), the basis upon which defendant rests his motion appears to collapse into a single, combined 12(b)(1) and 12(b)(6) ground. In effect, Taylor appears to contend that Counts V and VII fail to state a claim upon which relief can be granted and because those counts are the only counts which support federal court jurisdiction, this court lacks jurisdiction over the subject matter of the complaint.

■ On a motion to dismiss, a defendant may, in addition to basing the motion on Rule 12(b)(1), "assert any other Rule 12(b) defenses or objections that may be available. However, when the motion is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first...." 5 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 1350, p. 548 (1969). In considering a Rule 12(b)(1) motion, the court must construe the complaint broadly and liberally in conformity with the principle set forth in Rule 8(f) that "[a]ll pleadings shall be so construed as to do substantial justice." In addition, the court should read the complaint "as a whole with any relevant specific allegations found in the body of the complaint taking precedence over the formal jurisdictional allegation and all uncon-

troverted factual allegations being accepted as true." *Id.*, pp. 551–552.

Defendant appears to urge the court to consider Rule 12(b)(6) prior to Rule 12(b)(1) in ruling on his motion to dismiss. As when ruling under Rule 12(b)(1), the court, in considering a Rule 12(b)(6) motion, accepts the allegations of the complaint as true and construes the complaint in the light most favorable to the plaintiff. A complaint should not be dismissed pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Although defendant appears to conjoin Rules 12(b)(1) and 12(b)(6) into a single ground in support of his motion to dismiss the complaint, the standards applied under both Rules are similar enough to allow this court to consider defendant's motion pursuant to both Rules. In keeping with Rule 8(f) the court shall construe Share Net's complaint so as to do substantial justice. The court will read the entire complaint as a whole and accept all well-pleaded factual allegations as true. The court will construe the complaint in the light most favorable to Share Net with every doubt resolved in its behalf.

### II. *The Federal RICO Claim*

■ RICO, 18 U.S.C. §§ 1961–1968, provides a private civil cause of action to recover treble damages for injury "by reason of a violation of" its substantive provisions. 18 U.S.C. § 1964(c). Section 1962 prohibits, among other things, conducting, conspiring to conduct or participating in the conduct of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c) and (d). In order to state a claim for relief under civil RICO, a plaintiff need only allege each of the following four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. "[T]he statute requires no more than this." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–497, 105 S.Ct. 3275, 3285–3286, 87 L.Ed.2d 346 (1985). Moreover, "RICO is to

be read broadly and is to 'be liberally construed to effectuate its remedial purposes.'" *Id.,* at 497–498, 105 S.Ct. at 3286 (*quoting* Pub.L. 91–452, § 904(a), 84 Stat. 947). Taylor contends that Share Net failed to adequately allege in its complaint each of the four elements enumerated above.

### A. *Conduct Affecting Interstate Commerce*

■ Defendant contends that, for purposes of this motion to dismiss, plaintiff failed to adequately allege that Bellor Enterprises was engaged in or that its activities affected interstate commerce as required under 18 U.S.C. § 1962(c). Taylor correctly states that the enterprise, rather than the individual defendant, must engage in or affect interstate commerce. *U.S. v. Groff,* 643 F.2d 396, 400 (6th Cir.), *cert. denied,* 454 U.S. 828, 102 S.Ct. 121, 70 L.Ed.2d 103 (1981). The plaintiff need not demonstrate or allege that the predicate acts of racketeering activity themselves directly involved interstate commerce. For purposes of determining whether plaintiff's complaint states a claim, the plaintiff only need allege a minimal nexus of the enterprise to interstate or foreign commerce. *Cf. U.S. v. Rome,* 598 F.2d 564, 573 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980) (to satisfy requirement that enterprise engage in or affect interstate commerce, government must show at trial nexus, albeit minimal, of enterprise to commerce); *U.S. v. Murphy,* 768 F.2d 1518, 1531 (7th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986) (Circuit Court of Cook County affected commerce by buying goods to operate and by affecting lawyers and litigants); *Accord, Sedima, supra,* 473 U.S. at 497, 105 S.Ct. at 3286 (only need allege the required elements in order to state a claim).

■ In paragraph 40 of its complaint Share Net alleges that Bellor Enterprises is an enterprise which engages in or affects interstate commerce. Pursuant to Rule 8, Fed.R.Civ.P., plaintiff is only required to set forth in its complaint a short and plain statement of the grounds for this court's jurisdiction and the claims showing plaintiff is entitled to relief. The rules of pleading do not require anything more at this early juncture than the bare allegation that Bellor engaged in or affected interstate commerce. *See Seville Industrial Machinery v. Southmost Machinery,* 742 F.2d 786, 790 (3rd Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).[1]

### B. *The Enterprise*

Taylor further contends that Share Net did not adequately allege Bellor Enterprises to be an "enterprise" within the meaning of the RICO statute. "Enterprise" is defined in RICO as "any individual, partnership, corporation, association or other legal entity, or any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Relying on nonbinding caselaw from outside this court's jurisdiction, defendant argues that a RICO "enterprise" must function as a "continuing unit" that has an existence "separate and apart from the pattern of activity in which it engages." *Zahra v. Charles,* 639 F.Supp. 1405, 1407 (E.D.Mich. 1986).

■ Contrary to defendant's contention, however, the Eleventh Circuit specifically rejected the argument that the enterprise must be an identifiable group with an existence separable from the pattern of racketeering activity. In *U.S. v. Cagnina,* the court quoted an earlier Fifth Circuit case that "nothing in the [RICO] Act ... suggests that the enterprise must have been functioning and conducting operations in

---

1. Defendant additionally argues that plaintiff failed to allege any facts to support its claim of a RICO conspiracy under 18 U.S.C. § 1962(d). Defendant's argument fails to acknowledge that Rule 8 only requires that plaintiff provide a short and plain statement showing it is entitled to relief. Plaintiff, at this juncture, is not required to plead evidence to support its allegations. Plaintiff's bare allegation in the complaint that Taylor and his agents, associates and representatives conspired to conduct the affairs of Bellor through a pattern of racketeering activity, Complaint ¶ 45, is sufficient to satisfy the requirements of Rule 8.

pursuit of a common goal prior to its involvement in racketeering activities." 697 F.2d 915, 921 (11th Cir.), *cert. denied,* 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983) (*quoting U.S. v. Diecidue,* 603 F.2d 535, 545 (5th Cir.1979)). The *Cagnina* court specifically noted that the Supreme Court in *U.S. v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (cited in *Zahra, supra*), did *not* suggest that the enterprise must have a distinct formalized structure and indeed recognized that, in some cases, the proof used to show enterprise and pattern of racketeering activity may coalesce. *Id.,* 697 F.2d at 921.[2]

■ In addition to arguing that plaintiff's complaint is defective because plaintiff failed to allege Bellor had an existence separate from the alleged racketeering activities, Taylor contends that the complaint must fail because a person cannot be both a "person" and an "enterprise" within the meaning of RICO. Again, however, defendant supports his argument with caselaw from outside this jurisdiction. In *U.S. v. Hartley,* 678 F.2d 961, 988 (11th Cir. 1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983), the Eleventh Circuit held that a corporation may be simultaneously both a defendant and the enterprise under RICO.

The *Hartley* court was persuaded by and agreed with the government's reasoning that if an individual were named as the enterprise and a group of persons engaged in a pattern of racketeering with that individual, it would defy reason to suggest that the central figure (the enterprise) could not also be prosecuted under RICO. *Id.,* at 989. Therefore, although Share Net does not actually allege that Bellor and Taylor are one and the same,[3] even if the complaint did provide that Taylor was simultaneously both a defendant and the enterprise, the complaint would not be defective under Eleventh Circuit law.

### C. A Pattern

Under the RICO statute a "pattern" requires at least two acts of racketeering activity. In *Sedima* the Supreme Court suggested that, "while two acts are necessary, they may not be sufficient." *Sedima, supra,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The *Sedima* Court noted that some continuity in the acts must be present and, therefore, isolated acts and sporadic activity do not constitute a pattern. Quoting the Senate Report, the Court emphasized that "[i]t is this factor of *continuity plus relationship* which combines to produce a pattern." *Id.* (emphasis supplied by Supreme Court).

The Eleventh Circuit in *Bank of America v. Touche Ross & Co.,* 782 F.2d 966 (11th Cir.1986), referring to the *Sedima* dictum, stated that "to establish a pattern there must be a showing of more than one racketeering activity and the threat of continuing activity." *Bank of America,* 782 F.2d at 971. The court held in *Bank of America* that the complaint satisfied the pattern requirement where it alleged nine separate acts of wire and mail fraud, involving the same parties over a period of three years, for the purpose of inducing banks to extend credit to a corporation. The *Bank of America* court rejected the theory that, in order to satisfy the pattern requirement, the predicate acts must occur in different criminal episodes. Instead, the court held that "[a]cts that are part of the same scheme or transaction can qualify as distinct predicate acts" which, when carried out over time, may indicate a threat of continuing activity. *Id.*

---

**2.** Subsumed within this argument, defendant appears to argue that the complaint is defective because plaintiff alleges Bellor is a "bogus" or "nonexistent" business. The term "enterprise" for purposes of RICO, however, encompasses entities established solely for illicit purposes as well as legitimate businesses. See *U.S. v. Elliott,* 571 F.2d 880 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *U.S. v. Altomare,* 625 F.2d 5, 7 n. 7 (4th Cir.1980) and cases cited therein.

**3.** In fact, Share Net alleges that Bellor was established and used by Taylor for purposes of defrauding plaintiff and that Taylor and his agents, associates and representatives conspired to conduct the affairs of Beller through a pattern of racketeering activity. Complaint, ¶¶ 22, 45.

Defendant acknowledges that in this circuit, in order to satisfy the pattern requirement of RICO, a complaint must contain an allegation of threat of continuing activity. Defendant contends, however, that plaintiff's complaint fails to allege such a threat. Taylor argues that, although the complaint establishes the necessary "relationship" factor in that the acts allegedly had the same purpose, results, participants, victim and method of commission, the complaint fails to allege the necessary "continuity" factor.

Although the Supreme Court noted that the factors of continuity plus relationship are necessary to produce a "pattern" and the Eleventh Circuit stated that a "pattern" is established by a showing of the threat of continuing activity, defining "continuity" for purposes of establishing a RICO pattern has proved to be difficult and elusive. Courts which have tried to "develop a meaningful concept of 'pattern'" as suggested by the *Sedima* Court, 473 U.S. at 500, 105 S.Ct. at 3287, have concluded that "[t]he pattern question remains one to be decided in the context of a given case, upon consideration of all the facts alleged." *Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325, 1337 (N.D.Ill.1986). *See also Bank of America, supra* (finding that facts alleged satisfied pattern requirement of threat of continuing activity); *Sheftelman v. Jones*, 636 F.Supp. 263, 268 (N.D. Ga.1986) (Freeman, J.) ("on the facts as a whole the court does not find the continuity and ongoing design required to demonstrate a pattern").

■ In the instant action, plaintiff alleges in its complaint that Taylor caused Share Net to receive at least five invoices from Bellor Enterprises over a period of six months and that Taylor authorized Share Net to send separate checks worth a total of at least $593,500.00 to Bellor in payment of each invoice. Share Net further alleges that Taylor improperly signed the checks to Bellor Electronics or Bellor Communications and directed that the funds from each check be deposited in his personal account at the Heritage Bank. Although these acts may have been carried out by Taylor in order to further a single scheme to defraud and convert Share Net's funds to his own use, this court believes that the facts alleged indicate more than sporadic or isolated activity and satisfy the pattern requirement of "continuity plus relationship."

### D. *Racketeering Activity*

Finally, in support of his motion to dismiss, defendant contends plaintiff failed to adequately allege that Taylor engaged in racketeering activity. RICO defines "racketeering activity" to mean, among other things, any act which is indictable under 18 U.S.C. § 1341, relating to mail fraud. In a RICO action in which the plaintiff alleges defendant engaged in racketeering activity by means of mail fraud, the allegations of fraud must be pleaded with particularity. Fed.R.Civ.P. 9(b); *Doxie v. Ford Motor Credit Co.*, 603 F.Supp. 624 (S.D.Ga.1984); *Harris Trust and Savings Bank v. Ellis*, 609 F.Supp. 1118 (N.D.Ill.1985), *aff'd*, 810 F.2d 700 (7th Cir.1987). Taylor argues that Share Net failed to state the fraud allegations with sufficient particularity.

Plaintiff is correct in arguing that the mere assertion of mail fraud in conclusory language is not enough to support a RICO claim. *Id.* The purpose of Rule 9(b)'s requirement that fraud be stated with particularity is "to place defendant[ ] on notice of the precise misconduct with which [he is] charged and to safeguard defendant[ ] against spurious charges of immoral and fraudulent behavior." *Seville, supra,* 742 F.2d at 791. The plaintiff need only plead the "circumstances" of the alleged fraud with particularity, however, and, while allegations of date, time or place fulfill the requirement, plaintiff is "free to use alternative means of injecting precision and some measure of substantiation" into its fraud allegations. *Id.*

■ As the court stated above, for purposes of the instant motion to dismiss, the court reads the complaint as a whole, accepting the allegations as true. In its complaint, plaintiff states among other things: the dates, descriptions and amounts due on each of the invoices; the purchase order reference and date and amount of a check

signed by Taylor; and the dates of Board meetings at which Taylor allegedly fraudulently failed to disclose material information regarding the bogus Bellor invoices and Taylor's alleged authorization of the payment of those invoices. The court believes that plaintiff's complaint pleads the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice and safeguard against spurious charges. The court is mindful that Rule 9(b) must be read in conjunction with Rule 8 and that the court would be following "too narrow an approach and fail[ing] to take into account ... the general simplicity and flexibility contemplated by the rules" if it focused exclusively on the Rule 9(b) particularity requirement. Wright and Miller, *supra*, § 1298 at 407.

For the above reasons, the court finds plaintiff's complaint states a claim for relief under RICO, thus providing this court with jurisdiction over the subject matter, and DENIES defendant's motion with regard to Count V of plaintiff's complaint.

### III. *The Robinson-Patman Claim*

In Count VII of its complaint, plaintiff alleges that defendant, by his alleged actions as enumerated earlier in the complaint, violated Section 2(c) of the Robinson-Patman Amendment to the Clayton Act, 15 U.S.C. § 13(c). Defendant contends that plaintiff's complaint fails to state a claim for relief under the Robinson-Patman Act. The court agrees. Although plaintiff creatively argues that the alleged acts of defendant constituted an antitrust violation as defined in the Robinson-Patman Act, neither Section 2(c) of the Act nor the cases cited by plaintiff support a finding that plaintiff's complaint states a claim for relief under the Act.

Section 2(c) of the Robinson-Patman Act, known as the "brokerage provision," pro-

hibits any person in a sales transaction from paying a brokerage or granting a discount in lieu of a brokerage to any other person involved in the transaction except where services are rendered in connection with the transaction.[4] As it has been generally applied by the courts, the statute "prohibits payments by a seller to a buyer or to a direct or indirect agent for a buyer as a reward for the consummation of a sales transaction except in those instances where the buyer or his agent actually performs services for the seller who pays the commission, fee or other compensation." *Burch v. Goodyear Tire & Rubber Co.*, 420 F.Supp. 82, 91 (D.Md.1976), *aff'd*, 554 F.2d 633 (4th Cir.1977).

One of Congress' main objectives in enacting Section 2(c) was "to force price discriminations achieved by manipulation of brokerage fees and discounts out into the open where they would be subject to the scrutiny of those interested, particularly competing buyers." *Biddle Purchasing Co. v. FTC*, 96 F.2d 687, 692 (2d Cir.), *cert. denied*, 305 U.S. 634, 59 S.Ct. 101, 83 L.Ed. 407 (1938). The Fifth Circuit more recently held that "Section 2(c), in light of the language and purpose, requires no price discrimination in a situation of dummy brokerage," i.e., situations in which a buyer or buyer-owned brokerage concern receives actual, unearned payments of a brokerage fee. Indeed, some courts have ruled that discrimination is not a necessary element of Section 2(c) in cases of commercial bribery. Some courts have held that section 2(c) applies, not only to commercial brokerage arrangements, but to illegal payments as well.

Citing those cases in which the court found defendant violated Section 2(c) through commercial bribery activities, plaintiff contends that the allegations of its complaint state a claim for relief under the

---

**4.** 15 U.S.C. § 13(c) (1970) provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

**430**

Robinson-Patman Act. The facts alleged in plaintiff's complaint, however, do not support the characterization of this action as one involving commercial bribery. The literal language of Section 2(c) does not apply to allegations, such as set forth in plaintiff's complaint, of fraud, conversion and waste of corporate assets. The cases cited by plaintiff in which commercial bribery resulted in liability under Section 2(c) are inapposite to this action and are distinguishable on their facts.

In *Grace v. E.J. Kozin Co.*, 538 F.2d 170 (7th Cir.1976), the defendant-corporation, a competitor of the plaintiff-corporation, paid commissions, kickbacks and brokerage fees to Kane, a director and officer of the plaintiff who purchased, on behalf of the plaintiff, seafood products from the defendant at unreasonably high prices. Similarly, in *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674 (9th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976), the counterclaim defendant ("Calnetics") allegedly paid substantial sums of money to the counterclaim plaintiff's ("Distributor") employees to induce them to use their positions to see to it that Distributor purchased all, or substantially all of its air-conditioner requirements from Calnetics which allegedly produced inferior products. Finally, in *Rangen, Inc. v. Sterling Nelson & Sons*, 351 F.2d 851 (9th Cir.1965), *cert. denied*, 383 U.S. 936, 86 S.Ct. 1067, 15 L.Ed.2d 853 (1966), plaintiff, a competitor of defendant's in the manufacture of fish food, alleged that defendant made payments to an official of the state of Idaho in the understanding that the official would obtain for defendant the fish food business of Idaho.

The above cases, relied upon by plaintiff, clearly involved acts of commercial bribery which provided the bribing party an unfair advantage in sales transactions and caused injury to the plaintiff-corporation. In order for those cases to be at all applicable to the instant case, plaintiff's complaint would have to allege that Bellor paid Taylor to induce him to cause Share Net to purchase from Bellor. The facts alleged by plaintiff in its complaint suggest that the only payments received by Taylor were made by Share Net. The complaint does not allege either that commercial bribery, as that phrase is applied in Section 2(c) actions, occurred or that defendant caused price discrimination through manipulation of brokerage fees and discounts. Accordingly, the complaint fails to state a claim for relief under the Robinson-Patman Act and the court GRANTS defendant's motion with regard to Count VII.

## CONCLUSION

Reading plaintiff's complaint as a whole and taking the allegations to be true, the court finds that plaintiff's complaint satisfies the pleading requirements under RICO but fails to state a claim for relief under Section 2(c) of the Robinson-Patman Act. Therefore, the court DENIES defendant's motion with regard to Count V and GRANTS defendant's motion with regard to Count VII, hereby DISMISSING Count VII from Plaintiff's complaint.