**OUTLET COMMUNICATIONS, INC., Plaintiff,**

v.

**KING WORLD PRODUCTIONS, INC., Defendant.**

No. 85–1181–CIV–ORL–18.

United States District Court, M.D. Florida Orlando Division.

March 31, 1988.

Certified For Partial Publication.

Norman H. Singer, Sundlun, Scher & Singer, Washington, D.C., John M. Robertson, Robertson, Williams, Duane & Lewis, Orlando, Fla., for plaintiff.

Brenda D. Harms, Lawrence I. Fox, Robert A. Weiner, Berger & Steingut, New York City, Davisson F. Dunlap, Carlton,

Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, Fla., for defendant.

Anthony E. DiResta, Atlanta, Ga., John J. Upchurch, Daytona Beach, Fla., for Cox Communications, Inc., Licensee of WFTV.

## ORDER

GEORGE KENDALL SHARP, District Judge.

This action is before the court upon defendant's motion for judgment on the pleadings (Doc. 11) and defendant's motion for pretrial conference (Doc. 111). Plaintiff has opposed both motions (Docs. 13, 112). Defendant was permitted to file a reply memorandum in support of its motion for judgment on the pleadings (Doc. 18).

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, defendant's motion for judgment on the pleadings requests dismissal from plaintiff's complaint of Count I, breach of contract; Count III, antitrust violations; and Count IV, RICO claim. The court may consider only the pleadings, that is the complaint and answer, in deciding a Rule 12(c) motion for judgment on the pleadings. Fed.R.Civ.P. 12(c); *see Hill v. Linahan*, 697 F.2d 1032, 1034 (11th Cir.1983) (per curiam). "[T]he fact allegations of the complaint are to be taken as true, but those of the answer are taken as true only where and to the extent that they have not been denied or do not conflict with those of the complaint." *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir.1956); *Bass v. Hoagland*, 172 F.2d 205, 207 (5th Cir.), *cert. denied*, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949); *see Swerdloff v. Miami National Bank*, 584 F.2d 54, 57 (5th Cir.1978); *Kohen v. H.S. Crocker Co.*, 260 F.2d 790, 792 (5th Cir.1958). In order to prevail, a motion for judgment on the pleadings "must be based on the undisputed facts appearing in all the pleadings." *Stanton*, 239 F.2d at 106.

Furthermore, the court is obliged to scrutinize the complaint, construed in plaintiff's favor, and to allow it to stand "if plaintiff might recover under any state of facts which could be proved in support of the claim." *General Guaranty Insurance Co. v. Parkerson*, 369 F.2d 821, 825 (5th Cir. 1966); *Swerdloff*, 584 F.2d at 60; *see Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) ("[T]he purpose of pleading is to facilitate a proper decision on the merits."). In reversing and remanding the district court's granting defendant's motion for judgment on the pleadings, the former Fifth Circuit stated:

> The posture of the case requires us to consider whether plaintiffs could prove *any* set of facts which would permit recovery.... We make no suggestion as to whether such facts can be proven in this case. We merely hold that in our view of the law sufficient facts might possibly be shown under the cause of action here alleged to permit recovery and defendant was not entitled to judgment as a matter of law at the pleading stage of the proceeding.

*Swerdloff*, 584 F.2d at 60 (emphasis in original). In essence, the court must examine the pleadings to determine whether any set of facts would permit plaintiff to recover as a matter of law. *See International Union of District 50, United Mine Workers v. Bowman Transportation, Inc.*, 421 F.2d 934, 935 (5th Cir.1970) (per curiam); *Security Life & Accident Insurance Co. v. United States*, 357 F.2d 145, 150 (5th Cir. 1966).

Pursuant to the stringent requirements that govern granting a motion for judgment on the pleadings, the court will analyze the three counts, which defendant seeks to dismiss from plaintiff's complaint. For purposes of deciding the motion for judgment on the pleadings, the court must accept the facts stated in plaintiff's complaint as true. Two license agreements between the parties are attached to plaintiff's complaint; no exhibits are attached to defendant's answer.

The first count in question is Count I, plaintiff's breach of contract claim. This action concerns two consecutive, one-year

license agreements between plaintiff's Orlando and CBS television affiliate, WCPX, and defendant, a national programming distributor, for the television game show, WHEEL OF FORTUNE. Defendant is the exclusive distributor of WHEEL OF FORTUNE, which it licenses to various network affiliated stations and to independent stations. WHEEL OF FORTUNE premiered in broadcast year 1983–1984, which was its first season of syndication. Since the beginning of 1984, WHEEL OF FORTUNE has had the highest audience rating of any syndicated television show according to audience ratings published by Arbitron and A.C. Nielsen Company.

■ The court is precluded from addressing the merits of plaintiff's breach of contract count, alleging that it, as initial subscriber to a new first-run program, had an exclusive right to renewals based upon trade usage, because of the described pleading and procedural defect. In deciding a motion for judgment on the pleadings, the court may consider exhibits to the pleadings as part of the pleadings. Fed.R. Civ.P. 10(c); *see Dyal v. Union Bag–Camp Paper Corp.*, 263 F.2d 387, 391 (5th Cir. 1959). The court may not consider, however, matters outside the pleadings in a motion for judgment on the pleadings. Fed.R.Civ.P. 12(c); *Fidelity & Deposit Co. v. Southern Utilities, Inc.*, 726 F.2d 692, 693 (11th Cir.1984); *see Galanti v. United States*, 709 F.2d 706, 709 n. 3 (11th Cir. 1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984); *Hill*, 697 F.2d at 1034. Since the court has not been provided either license agreement in full with the pleadings, it cannot decide the motion for judgment on the pleadings regarding the breach of contract count. Therefore, defendant's motion for judgment on the pleadings as to Count I, breach of contract, is DENIED.

Count III of plaintiff's complaint contains allegations of antitrust violations, pursuant to section 1 et seq. of the Sherman Act, 15 U.S.C. § 1 et seq., and section 3 of the Clayton Act, 15 U.S.C. § 14.

Plaintiff's opposition to defendant's motion for judgment on the pleadings, however, states that, since its Clayton Act, section 3 claim is "entirely duplicative" of its Sherman Act, section 1 claim, plaintiff "will only press its claim under § 1." (Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings, at p. 7, n. 6). Therefore, the court will consider that plaintiff has abandoned its antitrust claim, pursuant to section 3 of the Clayton Act, and that the remaining antitrust allegation in plaintiff's complaint regards section 1 of the Sherman Act.

The alleged antitrust violation derives from the purported negotiations for plaintiff's licensing WHEEL OF FORTUNE from defendant for the 1985–1986 broadcast year. Plaintiff alleges that defendant represented that it would negotiate exclusively with plaintiff for renewal of WHEEL OF FORTUNE only if plaintiff would license two additional game shows, JEOPARDY! and HEADLINE CHASERS, from defendant. Plaintiff claims that defendant's stated price for WHEEL OF FORTUNE alone was not economically viable and that the package of the three game shows was its only alternative.

Plaintiff contends that defendant's newly added conditions, regarding licensing WHEEL OF FORTUNE for the 1985–1986 year, constituted negotiation in bad faith with disregard for plaintiff's rights pursuant to the parties' two previous license agreements, their course of dealing, and industry practices. Plaintiff claims that defendant has continued to refuse to negotiate a license agreement with plaintiff for WHEEL OF FORTUNE without the additional conditions. Upon information and belief, plaintiff alleges that defendant negotiated with its Orlando/Daytona Beach television market competitor, SFN Communications of Florida, Inc., licensee of WFTV, the ABC affiliate, for licensing WHEEL OF FORTUNE, JEOPARDY!, and HEADLINE CHASERS. Plaintiff further alleges that WFTV and others, whose identities are unknown, in other television mar-

kets have acquiesced to defendant's tie-in arrangement. Plaintiff contends that WFTV (and others) will be able to capitalize on and to benefit from the good will and audience acceptance of WHEEL OF FORTUNE that it established in the Orlando/Daytona Beach market and, thereby, plaintiff will lose viewers and advertisers.

Plaintiff alleges that defendant has entered into a *per se* illegal tie-in violation of section 1 of the Sherman Act by licensing WHEEL OF FORTUNE to WFTV and others with the condition that they also license JEOPARDY! and HEADLINE CHASERS from defendant. Such combinations, agreements, and contracts, plaintiff contends, were for the purpose and had the effect of restraining interstate and foreign trade and commerce in the license of first-run television programming to network affiliates and independent stations in the United States. Plaintiff claims that defendant possesses an unfair economic advantage over its competitors in the market because of its position as sole distributor of WHEEL OF FORTUNE and the success of that game show, and that it coerced the tie-in license agreement that resulted in WHEEL OF FORTUNE being obtained by a competitor of its affiliate, or WFTV. As a result of defendant's actions, plaintiff alleges that it will lose audience and advertising revenues in excess of $1,000,000.00 for commercial time during the telecast of WHEEL OF FORTUNE as well as for prior and subsequent programming. Plaintiff also claims treble damages, interest, attorneys' fees and costs, pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15.

With respect to allegations regarding the parties' two prior license agreements, the court faces the same obstacle that flawed Count I, the omission of all or portions of the 1983–1984 and 1984–1985 license agreements for WHEEL OF FORTUNE between the parties. Based upon the facts alleged in plaintiff's complaint and the legal requirements for a Sherman Act, section 1 tying claim, however, the court can analyze defendant's motion for judgment on the

pleadings as to Count III as a matter of law. The court is guided by recent decisions regarding tying arrangements by the Supreme Court and the Eleventh Circuit Court of Appeals. *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984); *Tic–X–Press, Inc. v. Omni Promotions Co.*, 815 F.2d 1407 (11th Cir.1987).

Plaintiff has alleged a tying arrangement by defendant whereby plaintiff economically could not license WHEEL OF FORTUNE (the tying product) for 1985–1986 without also licensing JEOPARDY! and HEADLINE CHASERS (the tied products) from defendant. "A tying arrangement is 'an agreement by a party to sell one product [the "tying" product] but only on the condition that the buyer also purchases a different (or "tied") product.'" *Tic–X–Press*, 815 F.2d at 1414 (quoting *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518–19, 2 L.Ed.2d 545 (1958)); *see Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 711 (11th Cir.1984) (per curiam); *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 629 (11th Cir.1984); *Kypta v. McDonald's Corp.*, 671 F.2d 1282, 1284 (11th Cir.), *cert. denied*, 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 109 (1982); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 375 (5th Cir. 1977). Furthermore, a tie is unlawful "only if the seller of the tying product has a financial interest in the source of the tied product." *Midwestern Waffles*, 734 F.2d at 712; *Keener v. Sizzler Family Steak Houses*, 597 F.2d 453 (5th Cir.1979).

Plaintiff's complaint has alleged facts that could meet the definitional requirements of a tying arrangement, the analysis that the court must make in deciding a motion for judgment on the pleadings. Plaintiff has represented that, economically, it could not license WHEEL OF FORTUNE for 1985–1986 without also licensing

the less desirable game shows, JEOPARDY! and HEADLINE CHASERS. It is apparent that defendant had a financial interest in the tied products, JEOPARDY! and HEADLINE CHASERS, since it also licensed those game shows.

█ Simply marketing two products together in a package is not an unlawful tying arrangement. *Tic–X–Press*, 815 F.2d at 1414; *see Jefferson Parish*, 466 U.S. at 11–12, 104 S.Ct. at 1558; *Northern Pacific*, 356 U.S. at 7, 78 S.Ct. at 519; *Amey*, 758 F.2d at 1502. Tying arrangements are anticompetitive, and thus unlawful under section 1 of the Sherman Act, when the seller has the ability "to *force*" buyers to purchase the tied product because of the seller's "control or dominance" over the tying product. *Tic–X–Press*, 815 F.2d at 1414 (emphasis in original); *see Northern Pacific*, 356 U.S. at 6, 78 S.Ct. at 518–19; *Times–Picayune Publishing Co. v. United States*, 345 U.S. 594, 611, 73 S.Ct. 872, 881–82, 97 L.Ed. 1277 (1953); *Midwestern Waffles*, 734 F.2d at 711–12; *Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.*, 710 F.2d 752, 780–81 (11th Cir.1983). The Supreme Court clarified the concern regarding seller exploitation of the tying product in a tying arrangement:

> [T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. When such "forcing" is present, competition on the merits in the market for the tied item is restrained and the Sherman Act is violated.

*Jefferson Parish*, 466 U.S. at 12, 104 S.Ct. at 1558. Plaintiff asserts that it was interested only in the licensing of WHEEL OF FORTUNE, not in licensing JEOPARDY! or HEADLINE CHASERS, the latter being characterized as "a new, untried and untested program with little appeal to a television station's requirement for programming." (Complaint at ¶ 25).

█ The Eleventh Circuit has held "that the principal evil of tie-ins is that they foreclose competition *on the merits* in the tied market." *Tic–X–Press*, 815 F.2d at 1417 (emphasis in original); *see Kentucky Fried Chicken*, 549 F.2d at 375. Tying arrangements, which pose the unacceptable risk of stifling competition, are anticompetitive and illegal *per se*. *Jefferson Parish*, 466 U.S. at 9–10, 104 S.Ct. at 1556–57; *Tic–X–Press*, 815 F.2d at 1414; *see Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 498–99, 89 S.Ct. 1252, 1256–57, 22 L.Ed.2d 495 (1969); *Times–Picayune*, 345 U.S. at 608–10, 73 S.Ct. at 880–81; *International Salt Co. v. United States*, 332 U.S. 392, 396, 68 S.Ct. 12, 15, 92 L.Ed. 20 (1947); *Midwestern Waffles*, 734 F.2d at 711–12; *Construction Aggregate*, 710 F.2d at 772, 781; *Kentucky Fried Chicken*, 549 F.2d at 374. In order to prove that a tying arrangement is illegal *per se*, a plaintiff must establish four elements:

> 1) that there are two separate products, a "tying" product and a "tied" product;
>
> 2) that those products are in fact "tied" together—that is, the buyer was forced to buy the tied product to get the tying product;
>
> 3) that the seller possesses sufficient economic power in the tying product market to coerce buyer acceptance of the tied product; and
>
> 4) involvement of a "not insubstantial" amount of interstate commerce in the market of the tied product.

*Tic–X–Press*, 815 F.2d at 1414; *see Amey*, 758 F.2d at 1502–03; *Midwestern Waffles*, 734 F.2d at 711–12; *Kentucky Fried Chicken*, 549 F.2d at 375.

█ The court has reservations concerning plaintiff's ability to establish the first element. "Two *separate* products are tied together if a difference exists in the 'character of the demand for the two items.'" *Amey*, 758 F.2d at 1503 (emphasis in original) (quoting *Jefferson Parish*, 466 U.S. at 19, 104 S.Ct. at 1562). The Supreme Court has explained that "a tying arrangement

cannot exist unless two separate product markets have been linked." *Jefferson Parish,* 466 U.S. at 21, 104 S.Ct. at 1562–63; *see Times–Picayune,* 345 U.S. at 614, 73 S.Ct. at 883; *Tic–X–Press,* 815 F.2d at 1415 n. 12. Since JEOPARDY! and HEADLINE CHASERS, like WHEEL OF FORTUNE, also are game shows, plaintiff's complaint is unclear as to whether there are two product markets as opposed to two products within the same market. From the facts stated in plaintiff's complaint, it is questionable to the court that there is any market for the tied product HEADLINE CHASERS, and restraint of competition in the tied product market is a crucial component for analysis of a *per se* illegal tying arrangement. Because plaintiff may be able to prove some set of facts to overcome this potential barrier to its *per se* illegal tying arrangement claim and because there are possible legal and factual bases for the remaining elements, the court is unwilling to foreclose plaintiff's antitrust allegation on this first element in a motion for judgment on the pleadings.

The second element that a plaintiff must allege is "that the seller *forced* or *coerced* the buyer into purchasing the tied product." *Tic–X–Press,* 815 F.2d at 1415 (emphasis in original); *see Jefferson Parish,* 466 U.S. at 12–15, 104 S.Ct. at 1558–60; *Midwestern Waffles,* 734 F.2d at 712. The court is cognizant that plaintiff did not purchase or license the alleged tied products for the 1985–1986 broadcast year. As in *Jefferson Parish,* a lawsuit brought by a competitor rather than a buyer, a competitor affected by an alleged unlawful tying arrangement is entitled to bring suit. *See Jefferson Parish,* 466 U.S. at 5, 104 S.Ct. at 1554–55; *Tic–X–Press,* 815 F.2d at 1415 n. 15; *see also Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977); *Amey,* 758 F.2d at 1498–1500; *Midwestern Waffles,* 734 F.2d at 710–11 (regarding a plaintiff's standing pursuant to 15 U.S.C. § 15 and the target market area, or market endangered by the alleged antitrust violation). "It is clear that although competitors do not have to show that they themselves were forced or coerced to do anything, they do have to show that the buyer of the tied package was forced or coerced to buy the tied product." *Tic–X–Press,* 815 F.2d at 1415 n. 15.

▪ Direct evidence of coercive behavior is not required, rather "coercion may be established by showing that the facts and circumstances surrounding the transaction as a practical matter forced the buyer into purchasing the tied product." *Id.* at 1418; *Kentucky Fried Chicken,* 549 F.2d at 377. Plaintiff must demonstrate that defendant actually exerted its "economic muscle" against the buyer so that the buyer was forced to purchase products in the tied market that it did not want or would have preferred to buy elsewhere on other terms. *Tic–X–Press,* 815 F.2d at 1415–16; *Jefferson Parish,* 466 U.S. at 12, 104 S.Ct. at 1558. In this action, plaintiff must show that the alleged purchaser/licensee, its competitor in the Orlando/Daytona Beach market, was forced to license tied products in order to license the tying . product, WHEEL OF FORTUNE. It readily is apparent that this showing cannot be made without discovery or a trial. Therefore, a finding that the buyer/licensee was forced by defendant into a *per se* illegal tying arrangement is premature and inappropriate based solely on the pleadings. *See Jefferson Parish,* 466 U.S. at 5, 104 S.Ct. at 1554–55; *Tic–X–Press,* 815 F.2d at 1411, 1415–19 (Allegations of *per se* illegal tying arrangements by competitors in the tied market were determined by the court following trial.).

▪ The third element that a plaintiff must plead to prove a *per se* illegal tying arrangement is that defendant had sufficient "[e]conomic or market power" to force the purchaser into a tying arrangement, which the purchaser would not accept in a competitive market. *Tic–X–Press,* 815 F.2d at 1420; *see Jefferson Parish,* 466 U.S. at 13–14, 104 S.Ct. at 1558–59; *Times–Picayune,* 345 U.S. at 605, 73 S.Ct.

at 878–79. The seller does not have to dominate the market or exercise economic power with regard to more than some of the buyers in the market to have sufficient market power. *Tic–X–Press,* 815 F.2d at 1420; *Fortner,* 394 U.S. at 503, 89 S.Ct. at 1258. "Economic power may be inferred from the tying product's desirability to consumers or from uniqueness in its attributes." *Tic–X–Press,* 815 F.2d at 1420; *Jefferson Parish,* 466 U.S. at 17, 104 S.Ct. at 1560–61; *Fortner,* 394 U.S. at 505 & n. 2, 89 S.Ct. at 1259 & n. 2; *United States v. Loew's, Inc.,* 371 U.S. 38, 45, 83 S.Ct. 97, 102, 9 L.Ed.2d 11 (1962). Establishing sufficient market power requires showing that would-be competitors in the tied market cannot offer the tying product on competitive terms because the seller has a cost advantage in producing the tying product or substantial entry barriers into the tying product market exist. *Tic–X–Press,* 815 F.2d at 1420; *see Fortner,* 394 U.S. at 505 n. 2, 89 S.Ct. at 1259 n. 2; *Spartan Grain & Mill Co. v. Ayers,* 735 F.2d 1284, 1288 (11th Cir.1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 785, 83 L.Ed.2d 779 (1985).

■ When the government has granted the seller a monopoly, such as "a patent or similar monopoly over a product, it is fair to presume that the inability to buy the product elsewhere gives the seller market power." *Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. at 1560; *Loew's,* 371 U.S. at 45–47, 83 S.Ct. at 102–03. Any attempt to enlarge such monopoly market power by conditioning the sale or lease of the monopolized or tying product on the purchase of a separate, tied product undermines competition on the merits in the second market and is unlawful. *Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. at 1560; *see United States v. Paramount Pictures, Inc.,* 334 U.S. 131, 156–59, 68 S.Ct. 915, 928–30, 92 L.Ed. 1260 (1948); *International Salt,* 332 U.S. at 395–396, 68 S.Ct. at 14–15. Plaintiff has alleged that defendant controls or holds the copyright to WHEEL OF FORTUNE. There is no dispute that defendant has the exclusive right to distribute WHEEL OF

FORTUNE, which has the highest audience ratings of any syndicated television show. It appears to the court that plaintiff has demonstrated the uniqueness and desirability of WHEEL OF FORTUNE, the tying product, and that defendant has the requisite or sufficient market power. *See Tic–X–Press,* 815 F.2d at 1420.

The fourth element that a plaintiff must allege to prove a *per se* illegal tying arrangement is involvement of a "not insubstantial" amount of interstate commerce in the market of the tied product. *Id.* at 1414, 1419; *see Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. at 1560; *Fortner,* 394 U.S. at 501–02, 89 S.Ct. at 1257–58; *Northern Pacific,* 356 U.S. at 6–7, 78 S.Ct. at 518–19; *Times–Picayune,* 345 U.S. at 608–10, 73 S.Ct. at 880–81; *International Salt,* 332 U.S. at 396, 68 S.Ct. at 15; *Amey,* 758 F.2d at 1503. The Supreme Court has held that the "controlling consideration" in determining whether the volume of commerce in the tied market is "not insubstantial" is "whether a total amount of business, substantial enough in terms of dollar-volume of business so as not to be merely *de minimis,* is foreclosed to competitors by the tie...." *Fortner,* 394 U.S. at 501, 89 S.Ct. at 1258; *Tic–X–Press,* 815 F.2d at 1419. The Eleventh Circuit has explained that "[t]he relevant figure is the total volume of sales tied by the sales policy under challenge, not merely the portion of this total accounted for by the particular plaintiff who brings suit." *Tic–X–Press,* 815 F.2d at 1419. Furthermore, "[i]f only a single purchaser were 'forced' with respect to the purchase of a tied item, the resultant impact on competition would not be sufficient to warrant the concern of antitrust law." *Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. at 1560; *Tic–X–Press,* 815 F.2d at 1419.

The facts alleged in plaintiff's complaint are deficient for the court's analysis of the fourth element for establishing an unlawful *per se* tying arrangement. Not only has plaintiff failed to delineate the tied market, but also it has not provided a dol-

lar amount with respect to the tied market to enable the court to make the *de minimis* determination. *See Tic–X–Press*, 815 F.2d at 1419–20. Although plaintiff has failed to allege adequately two of the four elements of a *per se* illegal tying arrangement, the court deems it advisable not to preclude plaintiff's antitrust claim on the merits because of pleading deficiencies. Accordingly, defendant's motion for judgment on the pleadings as to Count III, the antitrust claim, is DENIED.

Count IV of plaintiff's complaint contains RICO allegations pursuant the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. Plaintiff contends that defendant, a Delaware corporation, is a "person" within the meaning of section 1961(3) and that defendant engaged in section 1961(1) "racketeering activity" by means of mail and wire fraud, pursuant to 18 U.S.C. §§ 1341 and 1343, respectively. Plaintiff specifically refers to defendant's fraud allegations of Count II, wherein plaintiff alleges that defendant falsely represented to plaintiff that the cost for licensing WHEEL OF FORTUNE alone was $5,000.00 per telecast so that plaintiff would not pursue the exclusive license for WHEEL OF FORTUNE and defendant could then market the three-program package to a competitor of WCPX. Plaintiff claims the defendant deceitfully informed plaintiff that it would not market WHEEL OF FORTUNE to another television station in the Orlando/Daytona Beach market until plaintiff made a decision regarding licensing the show for 1985–1986. Plaintiff also alleges that the antitrust conduct of Count III and the RICO conduct of Count IV involved mail and telephonic communications.

Furthermore, plaintiff alleges that defendant, associated with Merv Griffin Enterprises, for which plaintiff was exclusive distributor for WHEEL OF FORTUNE, engaged in a "pattern of racketeering activity," as that term is defined in 18 U.S.C. § 1961(5) and that such activity affected interstate commerce. Plaintiff also contends that defendant violated 18 U.S.C. § 1962 by entering into illegal agreements in restraint of interstate commerce and that these racketeering activities caused plaintiff to lose its right to license WHEEL OF FORTUNE and defendant to derive income. Plaintiff alleges that defendant has caused plaintiff injury in the amount of $1,000,000.00, which figure should be trebled in accordance with 18 U.S.C. § 1964(c).

A claim of civil RICO pursuant to section 1964(c) necessarily alleges a violation of section 1962. 18 U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Although plaintiff has not designated the subsections of section 1962 which it contends that defendant violated, it appears to the court that plaintiff has alleged violations of subsections (a) through (c), since it has not alleged conspiracy under subsection (d). The Supreme Court has explained the requisite violations of section 1962(a)–(c) which state a claim under section 1964(c):

> Section 1962 ... makes it unlawful for "any person"—not just mobsters—to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)–(c). If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c).

*Sedima*, 473 U.S. at 495, 105 S.Ct. at 3285.

Section 1961 is the RICO definitional section. 18 U.S.C. § 1961. Plaintiff properly has alleged that defendant is a "person" within the meaning of section 1961(3). An "enterprise," as that term is defined by section 1961(4), however, is not alleged specifically.

The Eleventh Circuit has held in the criminal context that a corporation may be a defendant and enterprise under RICO,

and this has been recognized in civil RICO cases within the circuit. *United States v. Hartley*, 678 F.2d 961, 988 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *Shared Network Technologies, Inc. v. Taylor*, 669 F.Supp. 422, 427 (N.D.Ga.1987); *A.L. Williams Corp. v. Faircloth*, 652 F.Supp. 51, 55 (N.D.Ga.1986). Nevertheless, the Supreme Court, in a criminal RICO case, has held that the existence of an enterprise is a separate, RICO element that must be alleged and proved. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2428–29, 69 L.Ed.2d 246 (1981); *Mills v. Fitzgerald*, 668 F.Supp. 1554, 1558–59 (N.D.Ga.1987). Using this reasoning, a district court in this circuit has dismissed a civil RICO claim for failure "to allege the existence of an indispensable separate element of a civil RICO liability." *Mills*, 668 F.Supp. at 1559.

Merv Griffin Enterprises, for whom defendant exclusively distributes WHEEL OF FORTUNE, is mentioned twice in the complaint in a manner that appears to be insufficient to allege an enterprise. (Complaint at ¶¶ 12, 60). Nowhere in plaintiff's complaint does the word "enterprise" occur with relation to section 1961(4). *See Mills*, 668 F.Supp. at 1559. The court seemingly could grant judgment on the pleadings as to plaintiff's civil RICO count for failure to allege the element of enterprise. *Id.*

Even if plaintiff could overcome the pleading defect of failure to allege an enterprise, the court will continue its analysis of plaintiff's civil RICO count because there are additional pleading problems. Plaintiff has alleged the requisite predicate acts or "racketeering activity," defined under section 1961(1) as "indictable" under title 18 of the United States Code, to be mail fraud, section 1341, and wire fraud, section 1343. One Florida district court has held that indictable implies probable cause and that probable cause can be determined "only if the factual basis of the predicate acts is set out with specificity." *Banco de Desarrollo Agropecuario, S.A.*

*v. Gibbs*, 640 F.Supp. 1168, 1175 (S.D.Fla. 1986); *see United States v. Cox*, 342 F.2d 167, 170 (5th Cir.) (en banc), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

Furthermore, when the racketeering activity includes allegations of fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b); *Shared Network*, 669 F.Supp. at 428; *Mills*, 668 F.Supp. at 1558; *see Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 405 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Plaintiff may either allege date, time, place, and content of the alleged fraud or it may "use alternative means of injecting precision and some measure of substantiation into ... [its] allegations of fraud." *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); *Shared Network*, 669 F.Supp. at 428; *Mills*, 668 F.Supp. at 1558. While Rule 9(b) must be harmonized with Rule 8(a), "the mere assertion of mail [and wire] fraud in conclusory language is not enough to support a RICO claim" because defendant is not notified of the precise misconduct with which it is charged. *Shared Network*, 669 F.Supp. at 428; *see* Fed.R.Civ.P. 8(a); *Seville*, 742 F.2d at 791; *Mills*, 668 F.Supp. at 1558. Plaintiff's complaint generally alleges that defendant utilized the mail and wire communications to defraud plaintiff, and it does not supply an alternative means of substantiating the allegations of fraud. Plaintiff's pleading is insufficient to place defendant on notice of the charges of fraud. *Cf. Shared Network*, 669 F.2d at 428–29 (The court found that plaintiff's complaint plead circumstances of the fraud with sufficient particularity because it stated, among other things, the dates, descriptions and amounts due on each of the invoices; the purchase order reference and date and amount of a check signed by defendant; and the dates of board meet-

ings where defendant allegedly fraudulently failed to disclose material information regarding bogus invoices and defendant's alleged authorization of the payment of those invoices.).

In order to allege violation of section 1962(a)–(c), a plaintiff also must allege a "pattern of racketeering activity," defined as "at least two acts of racketeering activity" within the time period specified by section 1961(5). 18 U.S.C. §§ 1961(5) & 1962. Expounding upon the two-acts-of-racketeering-activity requirement for a pattern, the Supreme Court has said:

> The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

*Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. In addition to the "continuity plus relationship" requirement, approved by the Supreme Court for establishing a pattern of racketeering activity, the Eleventh Circuit expressly has adopted "the threat of continuing activity" for finding a pattern. *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14; *Bank of America National Trust & Savings Association v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986); *Mills*, 668 F.Supp. at 1560; *Sheftelman v. Jones*, 636 F.Supp. 263, 267 (N.D.Ga.1986); *see United States v. Fernandez*, 797 F.2d 943, 951 (11th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 3230, 92 L.Ed.2d 736 (1987); *Shared Network*, 669 F.Supp. at 428.

District courts in the Eleventh Circuit have interpreted the continuity standard of *Touche Ross* to require "'both temporal separation and relatedness.'" *Mills*, 668 F.Supp. at 1560 (quoting *Sheftelman*, 636 F.Supp. at 268); *see Touche Ross*, 782 F.2d at 971; *Shared Network*, 669 F.Supp. at 428. While *Touche Ross* found that the predicate acts may occur in the same criminal scheme to satisfy the pattern requirement, it determined the "threat of continuing activity" based on the parties' relationship, the time frame of the predicate acts, and the number of predicate acts. *Touche Ross*, 782 F.2d at 971; *Mills*, 668 F.Supp. at 1560; *Sheftelman*, 636 F.Supp. at 268; *see Shared Network*, 669 F.Supp. at 427–28. In *Touche Ross*, the complaint satisfied the pattern requirement because it alleged nine separate acts of wire and mail fraud over three years, involving the same parties for the purpose of inducing banks to extend credit to a corporation. *Touche Ross*, 782 F.2d at 971; *see Shared Network*, 669 F.Supp. at 427–28.

■ With the guidance of *Sedima* and *Touche Ross*, determination of the pattern requirement remains a decision that must be made in the context of the facts alleged in a given case. *See Shared Network*, 669 F.Supp. at 428; *Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325, 1337 (N.D.Ill.1986). The court finds that plaintiff's civil RICO allegations in Count IV are too indefinite and conclusory to state a RICO claim under section 1962(a)–(c). Even if two predicate acts have been alleged, plaintiff has failed to state a pattern of racketeering activity by demonstrating a threat of continuity. *Sheftelman*, 636 F.Supp. at 268; *see Mills*, 668 F.Supp. at 1561.

*Sedima* states the prerequisites for alleging a civil RICO claim:

> Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.... Any recoverable damages

occurring by reason of a violation ... will flow from the commission of the predicate acts.

*Sedima,* 473 U.S. at 497, 105 S.Ct. at 3285; *Morast v. Lance,* 807 F.2d 926, 932–33 (11th Cir.1987); *Touche Ross,* 782 F.2d at 969. Plaintiff has failed to allege definitively an enterprise as well as to state a "threat of continuing activity" necessary to allege a pattern of racketeering activity in the Eleventh Circuit. The court also is mindful that plaintiff has not sought to amend its complaint since filing on November 14, 1985, and conducting over a year of discovery. Therefore, defendant's motion for judgment on the pleadings as to Count IV, the civil RICO allegations, is GRANTED.

Accordingly, defendant's motion for judgment on the pleadings is DENIED IN PART and GRANTED IN PART. Defendant's motion for pretrial conference is DENIED. This case will proceed to trial during the trial term commencing April 4, 1988, but not prior to April 11, 1988.